No. 23-1097

# United States Court of Appeals for the Federal Circuit

MASTEROBJECTS, INC.,

*Plaintiff-Appellant,*

v.

META PLATFORMS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the Northern District of California in No. 3:21-cv-05428-WHA, Judge William H. Alsup

**PRINCIPAL BRIEF OF APPELLEE META PLATFORMS, INC.**

Jeffrey G. Homrig
LATHAM & WATKINS LLP
301 Congress Avenue
Suite 900
Austin, TX 78701
(737) 910-7300

Douglas E. Lumish
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Gabriel K. Bell
Rachel W. Cohen
Tiffany C. Weston
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Joseph H. Lee
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235

February 15, 2023

*Counsel for Appellee*

Claim 1 of U.S. Patent No. 8,539,024 provides:

> **1.** A system comprising:
>
> a server system, including one or more computers, which is configured to receive query messages from a client object, the server system asynchronously receiving and responding to the query messages from the client object over a network;
>
> the client object that, while a user is providing input comprising a lengthening string of characters, sends query messages to the server system;
>
> whereby the query messages represent the lengthening string as additional characters are being input by the user; and
>
> wherein the server system, while receiving said query messages, uses the input to query data available to the server system and send return messages to the client object containing results in response to the input; and
>
> wherein, upon receiving a return message of the return messages from the server system, the client object tests the usability of the results in the return message by checking that the return message corresponds to the latest query, and if usability is established, the client object displays or returns at least some result data to the user.

Appx8460.

# CERTIFICATE OF INTEREST

**Case Number:** 23-1097

**Short Case Caption:** *MasterObjects, Inc. v. Meta Platforms, Inc.*

**Filing Party/Entity:** Meta Platforms, Inc., Appellee

I certify the following information is accurate and complete to the best of my knowledge.

Date: February 15, 2023 Signature: */s/ Gabriel K. Bell*
Name: Gabriel K. Bell

1. **Represented Entities**. Provide the full names of all entities represented by undersigned counsel in this case.

   Meta Platforms, Inc.

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   None.

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   Meta Platforms, Inc. has no parent corporation and no publicly held corporation owns 10% or more of its stock as of the date of Meta Platforms, Inc.'s April 8, 2022 proxy statement.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **Latham & Watkins LLP:** Clara Wing-Kwan Wang, Paul A. Weinand

   **Scott, Douglass & McConnico, LLP:** Paige A. Amstutz

5. **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

   None.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   None/Not Applicable.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... v

STATEMENT OF RELATED CASES .......... ix

STATEMENT OF THE ISSUES .......... 1

INTRODUCTION .......... 2

STATEMENT OF THE CASE .......... 7

A. The Asserted Patents .......... 7

1. The Common Specification .......... 8

2. The Asserted Claims .......... 13

B. *Google*'s Rejection Of MasterObjects' Claim Construction .......... 14

C. District Court Proceedings .......... 16

SUMMARY OF THE ARGUMENT .......... 19

ARGUMENT .......... 24

THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON TWO INDEPENDENT GROUNDS .......... 24

I. META DOES NOT INFRINGE THE "QUERY MESSAGE" LIMITATIONS .......... 25

A. The District Court Correctly Held MasterObjects Is Collaterally Estopped From Relitigating Claim Scope In Light Of *Google* .......... 26

1. *Google* Decided The Same Issue That MasterObjects Seeks To Relitigate Here .......... 27

2. MasterObjects Cannot Evade *Google* .......... 29

**Page**

B. Regardless, The District Court Properly Construed The "Query Message" Term ....... 33

1. The Intrinsic Record Compels The District Court's Construction ....... 33

2. MasterObjects Misinterprets The Claims ....... 36

3. MasterObjects Misinterprets The Specification ....... 39

C. Meta Does Not Infringe The "Query Message" Terms Under The District Court's Construction ....... 43

II. META DOES NOT INFRINGE THE "ASYNCHRONOUS" LIMITATIONS ....... 44

A. The District Court Properly Construed "Asynchronous" ....... 44

1. The Server Must Be Able To Freely Communicate Without Waiting For The Client ....... 45

2. MasterObjects' Contrary Arguments Are Unavailing ....... 48

B. Meta Does Not Infringe The "Asynchronous" Limitations Under The District Court's Construction, And MasterObjects Does Not Contend Otherwise ....... 51

III. THE DISTRICT COURT PROPERLY REVISITED THE TEXAS COURT'S UNEXPLAINED PRELIMINARY CONSTRUCTIONS ....... 52

CONCLUSION ....... 56

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allergan, Inc. v. Sandoz, Inc.*,
681 F. App'x 955 (Fed. Cir. 2017) ....................32

*Anascape, Ltd. v. Nintendo of America Inc.*,
601 F.3d 1333 (Fed. Cir. 2010) ....................12

*Aspex Eyewear, Inc. v. Zenni Optical, Inc.*,
713 F.3d 1377 (Fed. Cir. 2013) ....................24, 26

*Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mutual Pharmaceutical Co.*,
384 F.3d 1333 (Fed. Cir. 2004) ....................45

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021) ....................55

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ....................49

*Biogen, Inc. v. Berlex Laboratories, Inc.*,
318 F.3d 1132 (Fed. Cir. 2003) ....................43

*Christianson v. Colt Industries Operation Corp.*,
486 U.S. 800 (1988)....................54

*Conoco, Inc. v. Energy & Environmental International, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) ....................52

*Continental Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019) ....................42

*CSR, PLC v. Skullcandy, Inc.*,
594 F. App'x 672 (Fed. Cir. 2014) ....................53

*Cuozzo Speed Technologies, LLC v. Lee*,
579 U.S. 261 (2016)....................32

**Page(s)**

*Edwards Lifesciences LLC v. Cook Inc.*,
582 F.3d 1322 (Fed. Cir. 2009) ....................................................................45

*Gechter v. Davidson*,
116 F.3d 1454 (Fed. Cir. 1997) ...............................................................24, 53

*GPNE Corp. v. Apple Inc.*,
830 F.3d 1365 (Fed. Cir. 2016) ....................................................................55

*Graco, Inc. v. Binks Manufacturing Co.*,
60 F.3d 785 (Fed. Cir. 1995) ........................................................................53

*Honeywell International, Inc. v. ITT Industries, Inc.*,
452 F.3d 1312 (Fed. Cir. 2006) ...............................................15, 34, 35, 40, 43

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021) .......................................................................49

*Invitrogen Corp. v. Biocrest Manufacturing, L.P.*,
327 F.3d 1364 (Fed. Cir. 2003) ....................................................................38

*Level Sleep LLC v. Sleep Number Corp.*,
No. 2020-1718, 2021 WL 2934816 (Fed. Cir. July 13, 2021). ........................52

*Life Technologies Corp. v. Biosearch Technologies, Inc.*,
No. C 12-00852, 2012 WL 1534891 (N.D. Cal. May 1, 2012)..........................54

*MasterObjects, Inc. v. Google, Inc.*,
582 F. App'x 893 (Fed. Cir. 2014)...............................................................16, 20

*MasterObjects, Inc. v. Google, Inc.*,
No. 11-cv-1054-PJH, 2013 WL 2319087 (N.D. Cal.
May 28, 2013), *aff'd*, 582 F. App'x 893 (Fed. Cir. 2014).............................2, 15

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
884 F.3d 1350 (Fed. Cir. 2018) ...........................................................26, 29, 31

*Neville v. Foundation Constructors, Inc.*,
972 F.3d 1350 (Fed. Cir. 2020) ....................................................................24

*Northern Telecom Ltd. v. Samsung Electronics Co.*,
215 F.3d 1281 (Fed. Cir. 2000) ......................................................................5

**Page(s)**

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008) ....................23, 54

*Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333 (Fed. Cir. 2013) ....................24, 26, 29

*Papst Licensing GmbH & Co. KG v. Fujifilm Corp. (In re Papst Licensing Digital Camera Patent Litigation)*, 778 F.3d 1255 (Fed. Cir. 2015) ....................23, 52

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)....................26

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ....................33, 38

*Regents of the University of Minnesota v. AGA Medical Corp.*, 717 F.3d 929 (Fed. Cir. 2013) ....................33, 34, 35

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) ....................34

*Shell Petroleum, Inc. v. United States*, 319 F.3d 1334 (Fed. Cir. 2003) ....................26, 29

*Snyders Heart Valve LLC v. St. Jude Medical*, Civil No. 18-2030, 2020 WL 1445835 (D. Minn. Mar. 25, 2020)....................54

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2015)....................24

*Trading Technologies International, Inc. v. eSpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010) ....................15, 34, 35, 40

*Tris Pharma, Inc. v. Actavis Laboratories FL, Inc.*, 755 F. App’x 983 (Fed. Cir. 2019)....................53

*Trustees of Columbia University v. Symantec Corp.*, 811 F.3d 1359 (Fed. Cir. 2016) ....................34, 35, 42

*Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007) ....................33, 35

**Page(s)**

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.*,
200 F.3d 795 (Fed. Cir. 1999) ....................................................................38

**STATUTES**

35 U.S.C. § 101 ..........................................................................................18

35 U.S.C. § 112 ..........................................................................................12

## STATEMENT OF RELATED CASES

No appeals in or from the same civil action or proceeding in the lower court have previously been before this Court or any other appellate court.

## STATEMENT OF THE ISSUES

1. Whether the district court properly granted summary judgment that Meta Platforms, Inc. ("Meta") does not infringe the asserted patent claims because the claims—as a matter of either collateral estoppel or construing the claims in the first instance—require sending only changed characters in a lengthening input string without resending previously sent characters, whereas Meta's accused product resends previously sent characters.

2. Whether the district court also properly granted summary judgment of non-infringement on another independent ground because the claims require both the client and server to be able to communicate with each other without waiting for the other, whereas Meta's accused servers cannot initiate communication without waiting for requests from clients.

3. Whether the district court properly revisited an earlier "preliminary" construction, which a Texas court (prior to transfer) adopted without any explanation, reasoning, or written opinion.

## INTRODUCTION

This appeal marks the second time MasterObjects has asked this Court to overturn a decision of the district court holding MasterObjects to the invention it actually described in the common specification of its patents. A decade ago, in 2013, MasterObjects asked this Court to reverse a stipulated judgment of non-infringement that stemmed from the determination by the Northern District of California that MasterObjects' patents in that action—U.S. Patent Nos. 8,112,529 ("the '529 patent") and 8,060,639 ("the '639 patent")—were limited by their specifications to a system that sends a query from a client to a server containing only characters that had changed since the prior query, and thus does not resend characters it had previously sent. Appx960-1045; *see MasterObjects, Inc. v. Google, Inc.*, No. 11-cv-1054-PJH, 2013 WL 2319087, at *11-12 (N.D. Cal. May 28, 2013) (Appx946-948), *aff'd*, 582 F. App'x 893 (Fed. Cir. 2014) ("*Google*").

Having lost that appeal, and without changing a relevant word in the '529 patent's specification, MasterObjects obtained new claims from three continuations of the '529 patent and one continuation-in-part that incorporated the same '529 patent specification by reference—issued as U.S. Patent Nos. 8,539,024 ("the '024 patent"), 9,760,628 ("the '628 patent"), 10,394,866 ("the '866 patent"), and 10,311,073 ("the '073 patent"). Appx1-2. Hoping for a better result, MasterObjects asserted these four patents against Meta in the Western District of Texas. After this

action was transferred to the Northern District of California, the district court again found that the same text in the specification had the same effect: both as a matter of collateral estoppel, and in light of prevailing claim construction principles, MasterObjects' patents are limited to a system in which only new or changed characters are sent in a server query, and previously sent characters are not resent. Appx5-10. The district court also held MasterObjects to the construction of "asynchronous" that MasterObjects itself proposed—that this claim term means "each side of the communication is free to communicate without waiting for the other side." Appx11-14. Then, because the evidence established as a matter of law that Meta has no system that practices either of these claim requirements, the district court issued summary judgment of non-infringement. Appx10, Appx14-16.

This Court should affirm. The district court properly construed MasterObjects' patents, and Meta does not infringe under those constructions.

First, MasterObjects is collaterally estopped from asserting a different claim construction in this case for the "query message" terms.[1] MasterObjects had a full and fair opportunity to litigate this issue in its prior case against Google, and lost. Appx946-948. To avoid this result, MasterObjects tries to distinguish the claim

[1] The asserted claims each include varying language that describes the message sent from the client to the server; the parties refer to these limitations as the "query message" terms.

language between the two actions. But that side-steps the core issue: as MasterObjects repeatedly acknowledged during its appeal in *Google*, the *Google* district court construed the claims based on the limiting effect of the '529 patent's *specification*. *E.g.*, Appx981, Appx986, Appx1006. Here, three of the asserted patents share the same specification as the '529 patent in *Google*, and the fourth incorporates that common specification by reference. And the asserted claims across all of the patents are directed to the same alleged invention, and MasterObjects accused the same sort of typeahead system in both actions. Thus, the issue in *Google* and the issue here is the same: the same specification limits MasterObjects' claims in the same way in both cases. Consequently, collateral estoppel applies.

Second, the intrinsic evidence compels the construction adopted by the district court. The specification is replete with statements describing the features of the "present invention," such that it defines the scope of the invention both expressly and by consistent usage. Most tellingly, the common specification states that "the protocol of the present invention provides a number of messages that allow the Client Quester to send just the changes to the input buffer, instead of sending the entire input buffer." Appx8454 (20:14-17). This same feature is highlighted throughout the common specification. *See, e.g.*, Appx8448 (8:31-38), Appx8457 (25:9-26:15), Appx8432 (Fig. 4). The specification does not include any examples or descriptions suggesting that the client re-sends characters to the server. And the

named inventors acknowledged that these passages from the specification reflect the "core of the invention," as the district court found. Appx9 (quoting Appx547 (57:4-16)). As MasterObjects concedes, Meta's accused Typeahead feature sends the full string of characters each time—not just the changes—and thus the district court properly granted summary judgment that Meta does not infringe under this construction.

Third, MasterObjects proposed, and the district court adopted as its construction, that "asynchronous" in the asserted patents means "each side of the communication is free to communicate without waiting for the other side." Appx11. After discovery revealed that Meta's accused products do not practice this limitation, MasterObjects looked to reverse course. Despite the clear language of this construction and MasterObjects' acknowledgement that "each side" means the client and server sides of the query respectively, MasterObjects now asks this Court to change the construction such that the server side need not be free to communicate without waiting for the client side. This new construction would read "each side" out of the construction MasterObjects asked for and received at the district court. That is improper. *See N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) (Court disfavors "appeals that allege error in claim constructions that were advocated below by the very party now challenging them").

In any event, MasterObjects' new construction is contrary to the intrinsic evidence. The common specification defines "asynchronous" to mean "both the Client and the Server can initiate communications at any moment in time." Appx8450 (12:24-26). It then goes on to give examples in which the server practices such asynchronous communications: "Data can also be presented to a client without user input, i.e. the data is automatically 'pushed' to the client." Appx8448 (8:55-57); *see also* Appx8453 (17:54-60), Appx8454 (19:9-14), Appx8458 (28:8-12). MasterObjects' new construction is an improper, results-oriented effort to ignore these asynchronous server-to-client communications.

Despite asking for a construction that requires *both sides* to be able to communicate without waiting for the other side, MasterObjects failed to provide any evidence that Meta's Typeahead server is free to communicate with a client without first waiting for the client to initiate communications by sending a request. And there is no such evidence. Indeed, MasterObjects' expert admitted that, in the source code he reviewed, a Typeahead query is always sent before a response is returned by the server. And that same source code confirms that Typeahead servers can send only one response to each query. On appeal, MasterObjects does not dispute that, under the district court's construction, Meta's Typeahead server does not infringe.

For each of these independent reasons, and as shown in further detail below, the district court correctly granted summary judgment that the accused product does

not practice either the "query message" or the "asynchronous" claim limitations. Meta respectfully asks the Court to affirm.

## STATEMENT OF THE CASE

### A. The Asserted Patents

The asserted patents (the '024, '628, '866, and '073 patents) are directed to predictive searching, *i.e.*, providing auto-complete or type-ahead information. *See* Appx8425-8465 ('024 patent); Appx8467-8504 ('628 patent); Appx8506-8541 ('866 patent); Appx8543-8601 ('073 patent); Appx1.

The patents share a common parent (the '529 patent), as shown below.




*See* Appx2 (asserted patents highlighted in blue); Appx1323-1363 ('529 patent). The '024, '628, and '866 patents are continuations that have the same common specification as the '529 patent.[2] The '073 patent is a continuation-in-part stemming

[2] Hereafter, citations are to the '024 patent specification unless otherwise noted.

from the ’529 patent and incorporates the same specification by reference. Appx8582 (’073 patent at 1:9-30). MasterObjects claims priority to the ’529 patent for all four asserted patents. Appx1118 n.2.

**1. The Common Specification**

The common specification describes an alleged improvement over prior art systems that enabled a user to search a database for information. Appx8445-8446 (2:31-3:9). The specification explains that prior art search systems were flawed because the Internet technologies on which they were based—such as HTTP—were inherently “session-less.” Appx8445 (2:49-51). In other words, the prior technologies did not maintain a state of communication between a client and a server (a “session”) to provide a reliable way for the server to keep track of successive requests from the same client, nor for the server to automatically update the client’s display. Appx8445 (2:51-56), Appx8450 (12:11-16).

The common specification proposes a “session-based” system which, to save on processing and bandwidth usage, has the client send to the server only new characters entered by the user into a search string, rather than re-sending all of the previous characters typed by the user plus any new characters that were entered after the prior transmission to the server. Appx8448 (8:31-38), Appx8454 (18:45-19:33, 19:46-66), Appx8432 (Fig. 4); *see also* Appx8553 (Fig. 6E), Appx8582 (2:31-51), Appx8584 (6:23-31), Appx8587 (11:14-29) (’073 patent). Thus, in the purported

invention, when a user is typing "apple" into a search string, the client may send "a," then "p," then "p" to the server, or "a" then "pp," but never resends characters such as "a" then "ap" then "app." The server then assembles the characters, executes a search using the assembled query string, and responds with search results. Appx8448 (8:31-46).

The common specification provides a similar example which describes how the system operates in response to a user whose ultimate search query to the server is "abc." When the user types "a," then "b," the client may first send "a" and "b" in separate query messages to the server. Appx8453-8454 (18:45-19:14). The server then combines those two characters into "ab," which it uses to search, and to return "feedback" in the form of a suggested search (e.g., "abacus"). Appx8453-8454 (18:45-19:14). When the user types "c," the client includes only "c" in its subsequent query message to the server; "ab" is not re-sent because the server recognizes the new addition of "c" as part of the same session, and so combines "ab" with "c" to form "abc" on the server side. Appx8454 (19:18-21, 28-33). Because the server aggregates queries sent by the client, in the alleged invention it is important that the client *never* re-send characters. If it did, the server would aggregate them to form the wrong query—using the same example, if the client sent "a" then "ab" then "abc," the server would aggregate them and search for "aababc."

Figure 4 of the asserted patents (shown below) illustrates the alleged invention in the context of MasterObjects' commercial embodiment called QuestObjects. Appx8432 (Fig. 4). The client ("Client Quester") has an input buffer that holds the data the user types, and the server ("Server Quester") has an input buffer that holds portions of the user's input that the server received from the client. Appx8453 (17:61-18:17). The server may use information in its input buffer to search and retrieve results. Appx8453 (17:61-18:17). For example, when a user types the first character, "a," the client appends "a" to its input buffer and sends the newly added contents of its input buffer (here the letter "a") to the server. Appx8453 (18:45-55).

When the user types an additional character, "b," the client sends only that character to the server, and the server combines "a" and "b" together to search the string "ab." Appx8453-8454 (18:64-19:2). As shown in the illustration below the "query['ab']" is sent to the backend (Service) and a Result Set 405 is retrieved and returned to the client. Appx8454 (19:2-7).

Next, the figure shows that, when the user types "c," the client sends only "c" to the server. The server adds "c" to its buffer to form "abc," and runs the query "abc." Appx8454 (19:15-30); *see also* Appx8454 (20:6-23), Appx8434 (Fig. 6A) (client sends an "input buffer *change* message" to the server (emphasis added)).




FIG. 4

Appx8432 (Fig. 4) (annotated; yellow highlighting added to client's transmission of new or changed characters to server; green highlighting added to server's reconstruction of the query for backend processing).

This transmission only of new or changed characters is not merely an exemplary embodiment but rather, as noted above, an integral aspect of the invention itself and the only embodiment disclosed in the specification. *See, e.g.*, Appx8454 (20:14-17) ("[T]he protocol of *the present invention* provides a number of messages that allow the Client Quester to *send just the changes to the input buffer, instead of sending the entire input buffer*." (emphasis added)).

As noted, the ’024, ’628, ’866 patents share this same common specification with the ’529 patent, and the ’073 patent—which issued from a continuation-in-part application based on the ’529 patent—incorporates it by reference. Additionally, MasterObjects relies on the ’529 patent to support an earlier asserted priority date for the ’073 patent. Appx1118 n.2 (“every asserted ’073 claim is entitled to the benefit of the ’529 Patent’s filing date”); *see Anascape, Ltd. v. Nintendo of Am. Inc.*, 601 F.3d 1333, 1337 (Fed. Cir. 2010) (“For a parent application to provide the filing date for claims of a continuing application, the description of the parent must meet the requirements of 35 U.S.C. § 112, first paragraph, as to that claimed subject matter.”). Moreover, the material added to the ’073 patent also describes sending only the changes that have not yet been sent to the server. For example, the ’073 patent states that “each client-side Quester maintains the client-side input (typically comprising user input, i.e. characters typed by a user …), and *transmits changes to the QuestObjects server* as they occur, or delayed and coalesced if they occur in quick succession.” Appx8584 (’073 patent at 6:23-31) (emphasis added).

Additionally, the common specification explains that the communications between the client and server are “asynchronous” “in that both the Client and the Server can initiate communications at any moment in time.” Appx8450 (12:24-26). In particular, with respect to the server, the specification repeatedly describes a “push” embodiment in which the server automatically sends data to the client

without first receiving a client request. *See* Appx8447 (6:15-16) ("Data can also be presented to a client without user input, i.e., the data are automatically pushed to the client."); Appx8448 (8:55-57) (same); Appx8453 (17:54-57) ("In other embodiments, Questlets [user interface components of the preferred embodiment] can be used to display current stock quotes, news flashes, advertisements, Internet banners, or data from any other real-time data push Service."). Throughout the asserted patents, the term "asynchronous" is used to require the ability for the server to communicate with the client without waiting for a client request.

### 2. The Asserted Claims

Forty-three claims are asserted in this case. Appx2310-2315 at Appx2310-2311; Appx6965-6966 & n.3. All asserted claims have the two limitations at issue in this appeal: the "query message" limitations and the "asynchronous" limitations. Claim 1 of the '024 patent, which MasterObjects identified as exemplary, is representative:

> **1.** A system comprising:
>
> a server system, including one or more computers, which is configured to receive query messages from a client object, the *server system asynchronously receiving and responding* to the *query messages* from the client object over a network;
>
> the client object that, while a user is providing input comprising a lengthening string of characters, sends query messages to the server system;

> whereby the *query messages represent the lengthening string as additional characters are being input by the user*; and
>
> wherein the server system, while receiving said query messages, uses the input to query data available to the server system and send return messages to the client object containing results in response to the input; and
>
> wherein, upon receiving a return message of the return messages from the server system, the client object tests the usability of the results in the return message by checking that the return message corresponds to the latest query, and if usability is established, the client object displays or returns at least some result data to the user.

Appx8460 (emphases added); *see* Appx2-3; Opening Br. of Appellant MasterObjects, Inc. ("Br.") Inside Cover.

### B. *Google*'s Rejection Of MasterObjects' Claim Construction

On March 7, 2011, MasterObjects sued Google in the Northern District of California, alleging infringement of the parent '529 patent and the related (continuation-in-part) '639 patent. *MasterObjects, Inc. v. Google, Inc.*, No. 11-cv-01054-PJH (N.D. Cal.) ("*Google*"); *see* Appx1323-1363 ('529 patent); Appx5111-5164 ('639 patent). The asserted claims (like here) recited that, when a user inputs a search string, the client sends queries to the server and (like here) the parties disputed whether or not the queries include just the changed characters as opposed to the entire string. Appx946-948.

In construing the claims, the district court agreed with the defendant that "each query consists only of the changes to the input string that were not sent in any previous consecutive query." Appx932-949 at Appx947 (*Google*, 2013 WL 2319087, at *11-12). The court relied on the specification's limiting statement (the same one at issue here) that "the protocol of the present invention" is one that "send[s] just the changes to the input buffer, instead of sending the entire input buffer." Appx1351 ('529 patent at 20:11-14); *see* Appx948. The court found that this statement "indicates that the description is intended to apply to the invention as a whole, and not just a single embodiment." Appx948 (citing *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1353 (Fed. Cir. 2010); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006)).

Accordingly, the court construed the claimed queries (which the court referred to as the "additional characters" terms, Appx946-947) as sending "only the changes to the input string that were not sent in any previous consecutive query." Appx948.[3] The court denied MasterObjects' motion for reconsideration, again rejecting MasterObjects' assertion that the specification's statement about the present

---

[3] *Google* used "additional characters" as shorthand for the longer claim limitations at issue, which described the queries. *See* Appx946-947 (the "four phrases" that were being given a "common construction" included, e.g., "'wherein each of the corresponding consecutive queries lengthens the string by the additional characters to form a lengthening string for retrieving the matching content from the server system'" (quoting Appx1357 ('529 patent cl. 1))).

invention "refer[s] only to one specific embodiment." Appx954. MasterObjects then stipulated to non-infringement under that construction. Appx956-958.

On appeal, MasterObjects again disputed that construction, asserting that "the specification does not limit the claims to sending 'only the changes,'" and that the district court incorrectly found the "present invention" language limiting. Appx997 (capitalization omitted), Appx1005-1006 (CAFC opening brief); *see also, e.g.*, Appx978-979 (CAFC opening brief) ("[T]he district court concluded that the claims were so limited by the specification."); Appx2298-2301 (CAFC reply brief) (arguing that the "present invention" passage is "optional," "permissive," merely an embodiment, and "not a 'central' part of the invention"). This Court summarily affirmed. *MasterObjects, Inc. v. Google, Inc.*, 582 F. App'x 893 (Fed. Cir. 2014).

### C. District Court Proceedings

On February 5, 2020, MasterObjects brought the present suit against Meta in the Western District of Texas, alleging infringement of four patents stemming from the '529 patent. *See* Appx22. Shortly thereafter, Meta moved to transfer the litigation to the Northern District of California. Appx52-105. While the motion was pending, the parties briefed claim construction issues and Judge Albright held a *Markman* hearing on November 30, 2020. Appx340; Appx1109; Appx1645; Appx2110; Appx2143; Appx2162, Appx2495. A day before the hearing, the Texas court issued preliminary constructions that adopted MasterObjects' proposals, but

provided no rationale for those preliminary constructions. Appx5388. After the hearing, the Court issued only a minute order stating that "[t]he Court kept his preliminary construction." Appx2495. The Texas court did not issue any formal written order or opinion on the claim construction issues, and did not explain its reasoning.

Several months later, the Texas court granted Meta's motion to transfer the case to the Northern District of California. Appx5345-5357. The parties filed a Joint Case Management Statement in which Meta noted the absence of a claim construction opinion and requested that the California court make its own assessment of the construction for the "query message" terms based on the parties' existing submissions. Appx5363, Appx5368-5369, Appx5379-5382. Meta's statement highlighted the collateral estoppel effect of the *Google* action on the "query message" terms and rebutted MasterObjects' contention that Meta must meet a reconsideration standard. Appx5381-5382. The California court, per Judge Alsup, issued a Case Management Order that stated that all claim construction issues are to be addressed as part of summary judgment. Appx5392-5400 at Appx5398 (¶¶ 21, 22).

On August 26, 2022, Meta moved for summary judgment that its accused Typeahead feature is non-infringing on two independent grounds: under the proper claim constructions, Typeahead does not practice the "query message" term or the

"asynchronous" term found in each asserted claim. Appx6954, Appx6976-6982. The district court agreed on both, granting summary judgment on October 20, 2022. Appx1-16.[4]

First, the court held that the "query message" term requires sending only the changes to the lengthening query string, whereas the Typeahead feature undisputedly sends the *entire* query string each time. Appx5-10. In light of the *Google* decision, the court found that MasterObjects was collaterally estopped from relitigating whether the "query message" term has a broader scope. The district court explained that, because the common specification in this case contains the same limiting language as in *Google*, "[t]he claim-construction issue in this action is identical to the one addressed in *Google*: whether the specification limits the claimed invention such that the client sends 'just the changes' to the server." Appx8. The court, therefore, barred MasterObjects from relitigating that dispute. The district court also conducted its own analysis of the merits and adopted the same construction: the common specification's description of "the present invention" limited the client to sending only the changes of the lengthening string to the server. Appx8-10. Accordingly, as there was no dispute that Meta's Typeahead feature does

[4] Meta also moved for summary judgment on other grounds, including ineligibility under 35 U.S.C. § 101 and no willful infringement. *See* Appx6956-6957. The court did not reach those grounds.

not send only the changes, the court held that it does not infringe the "query message" term under a proper construction. Appx10.

Second, the district court held that the "asynchronous" term requires that both the server and the client are free to initiate communications with each other without waiting for the other side. Appx11-16. The court explained that MasterObjects' own construction (which the Texas court adopted) states that "'each side of the communication is free to communicate without waiting for the other side.'" Appx11 (quoting Appx8422); *see also* Appx14 (quoting Appx1138). And the court explained that "[t]he common specification expressly states that a server communicating asynchronously is able to initiate communication with the client" and that this feature was central to the invention. Appx12 (citing Appx8450 (12:24-26)). Accordingly, as the accused Typeahead server "is not free to communicate spontaneously," the court held that Meta's Typeahead feature does not infringe the "asynchronous" term under a proper construction. Appx15.

## SUMMARY OF THE ARGUMENT

The district court correctly granted summary judgment of non-infringement because Meta's accused Typeahead feature does not infringe the asserted claims.

I. The district court held that the claims' "query message" terms require the client to send only the changed characters—rather than the entire search string—

each time it queries the server. The district court reached that conclusion on two separate grounds. Both are correct.

A. The district court correctly held that MasterObjects is collaterally estopped because it litigated, and lost, the same issue years ago in the *Google* case. In *Google*, MasterObjects asserted the ancestor patent of the patents asserted in this case, which has the same common specification. The *Google* court held that the specification's description of the invention limited the claim scope to a system in which the client's query contains only the changes to the input string. The *Google* court relied, in particular, on the specification's statement that in "the present invention," the client "send[s] just the changes to the input buffer, instead of sending the entire input buffer." Appx1351 ('529 patent at 20:11-14); *see* Appx948. The court found that this statement "indicates that the description is intended to apply to the invention as a whole, and not just a single embodiment." Appx948. And this Court affirmed. *Google*, 582 F. App'x 893. The same issue controls here. Once again, MasterObjects contends that the same specification—with the same "present invention" language—does not limit the scope of the invention and merely applies to a specific embodiment. But that is precisely what the *Google* court rejected—and precisely why MasterObjects lost in that case. Basic collateral estoppel principles, therefore, preclude MasterObjects from relitigating that issue here.

MasterObjects' principal argument on appeal is that the claim language in this case is different from the claims at issue in *Google*. That is superficially true, but misses the mark for two reasons. First, the claims in both cases describe a system in which the client sends queries with the changed characters. Second, regardless, any claim differences are irrelevant because the *Google* court held that the specification imposes limitations on the invention *as a whole*, not merely specific embodiments. In other words, the court held that the specification's limiting language applies to *all* client queries that could be claimed, not just the particular claim language in *Google*.

That same issue is dispositive here. MasterObjects had a full and fair opportunity to litigate the issue, and is barred from relitigating with a new defendant.

B. The district court also correctly determined that, even if collateral estoppel did not apply, the result is the same based on an independent analysis of the intrinsic record: the specification limits the claim scope. The specification describes "the present invention" as requiring that each client query to the server consist of only the changes to the input string, rather than the entire string. And it depicts and describes such embodiments, whereas *no* embodiments describe resending prior characters. This Court has held that, in such circumstances, the specification limits the scope of the claims. So too here, as the district court held.

Thus, whether based on collateral estoppel or an independent claim construction analysis, the result is the same: the claims require sending only the

changed characters, rather than the entire string. And under that claim scope, Meta's accused features undisputedly do not infringe the asserted claims. The district court's non-infringement judgment can be affirmed on that basis alone.

II. For the "asynchronous" terms, Meta's Typeahead server is not free to communicate without waiting for the client. Under the claim construction *proposed by MasterObjects* and adopted by both the Texas and California courts, *both* the client and the server must be "free to communicate *without waiting for the other side*." Appx11 (emphasis added). Then, after discovery confirmed that Meta's Typeahead does not work this way—Typeahead's server must receive a request from a client before it can communicate with that client—MasterObjects pivoted and argued instead that the construction does <u>not</u> require the server to be able to communicate freely. But this cannot be squared with the use of "each side" in the construction, and the specification forecloses MasterObjects' position, as it consistently describes server-initiated communications throughout the specification. Indeed, the specification expressly states that the system is "bi-directional and asynchronous, in that both the Client and *the Server can initiate communications at any moment in time*." Appx8450 (12:24-26) (emphasis added).

MasterObjects argues that this description is just an exemplary embodiment, but it is not. As the district court explained, the capitalization used in this portion of the specification is not limited to a specific embodiment, but rather a definition of

the general system. Likewise, the other language that MasterObjects cites in the claims and the specification does not undermine that conclusion.

The district court's construction of "asynchronous" was correct. In turn, the district court correctly granted summary judgment on that basis, as MasterObjects presented no evidence that Meta's Typeahead servers are ever free to initiate communications. Indeed, the record shows the opposite: that Typeahead servers communicate with clients only in response to client queries, and can send only one response per query. MasterObjects does not contest that conclusion on appeal: under the district court's construction, Meta's Typeahead servers do not infringe.

III. The district court properly revisited the Texas court's preliminary claim constructions. A district court is free to—and often must—reassess claim construction as a case proceeds. *See, e.g.*, *Papst Licensing GmbH & Co. KG v. Fujifilm Corp. (In re Papst Licensing Digit. Camera Patent Litig.)*, 778 F.3d 1255, 1261 (Fed. Cir. 2015); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362-63 (Fed. Cir. 2008). That was especially so here, as the Texas court provided no written opinion or any reasoning for its preliminary constructions. Indeed, the Texas court informed the parties of its "preliminary constructions" in an email that lacked any explanation of its reasoning, and then merely issued a brief minute order, stating that it "kept [its] preliminary construction." Appx2495. But for this Court "to fulfill its role of judicial review, it must have a clear understanding

of the grounds for the decision being reviewed." *Gechter v. Davidson*, 116 F.3d 1454, 1457 (Fed. Cir. 1997). In these circumstances, the district court properly reassessed—and explained—the correct claim construction in order to rule on summary judgment.

The district court's claim constructions were correct and its resulting summary judgment of non-infringement should be affirmed.

## ARGUMENT

***Standard of Review.*** This Court reviews the district court's grant of summary judgment *de novo* under Ninth Circuit law. *Neville v. Found. Constructors, Inc.*, 972 F.3d 1350, 1355 (Fed. Cir. 2020). This Court reviews the district court's claim construction *de novo* and any underlying factual findings for clear error. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015). This Court also reviews the district court's collateral estoppel ruling *de novo*. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1341 (Fed. Cir. 2013). That review is guided by regional precedent, but applies this Court's precedent to any aspects that involve "substantive issues of patent law." *Id.* at 1342; *Aspex Eyewear, Inc. v. Zenni Optical, Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013).

## THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON TWO INDEPENDENT GROUNDS

The accused product, Meta's Typeahead feature, does not infringe the asserted claims for two reasons: (1) the Typeahead client resends the entire input string

(including previously sent characters) to the server as the user types, whereas the "query message" claim term requires sending only the changed characters; and (2) the Typeahead server is not free to communicate with the client without waiting for a client request, whereas the "asynchronous" claim term requires that capability.

## I. META DOES NOT INFRINGE THE "QUERY MESSAGE" LIMITATIONS

The district court correctly held that Meta's accused Typeahead feature does not infringe the asserted claims based on the proper construction of the "query message" limitations. Appx5-10. All asserted claims recite that, as the user types a search string, a query (recited as a "query message," "request message," or "search query") is sent from the client to the server. Appx5-6. For example, claim 1 of the '024 patent recites: "the query messages represent the lengthening string as additional characters are being input." Appx8460. The parties and district court use "query message" to refer to this limitation across all claims. Appx5-6; *see* Appx2310-2316 at Appx2313 (joint claim construction statement).

The district court determined that the "query message" terms require sending only the changes in what the user types rather than re-sending the entire string with each additional character. That was correct for two reasons: (a) *Google* collaterally estops MasterObjects from asserting a broader claim scope (Appx6-8) and, in any event, (b) the intrinsic record makes clear that the "query message" terms are limited

to sending only the changes (Appx8-10). Under that proper construction, Meta's Typeahead feature undisputedly does not infringe.

### A. The District Court Correctly Held MasterObjects Is Collaterally Estopped From Relitigating Claim Scope In Light Of *Google*

Collateral estoppel "precludes a plaintiff from relitigating identical issues by merely switching adversaries." *Aspex Eyewear*, 713 F.3d at 1380 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). That "protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Ohio Willow Wood*, 735 F.3d at 1342; *see also, e.g.*, *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003) (collateral estoppel applies where previously-litigated issue is identical, adversely resolved, and essential). Importantly, "collateral estoppel [is not limited] to patent claims that are identical"—"[r]ather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow Wood*, 735 F.3d at 1342. Collateral estoppel applies if any claim differences "do not materially alter the [issue]." *Id.*; *see Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2018).

Here, as the district court held, the claim construction is identical to the one that was litigated, resolved against MasterObjects, and essential to the decision in *Google*. Appx6-8. In particular, the issue here is "whether the specification limits the claimed invention such that the client sends 'just the changes' to the server,"

rather than the entire string. Appx8. MasterObjects previously litigated, and lost, the same issue in *Google*, and therefore cannot relitigate it here.

### 1. *Google* Decided The Same Issue That MasterObjects Seeks To Relitigate Here

The claims in *Google* and the asserted claims here are directed to the same functionality: a client receives a lengthening string input by the user and sends a query message to the server, which then retrieves matching results. In *Google*, the claims of the '529 patent (the ancestor of the patents here) recited that, as a user types a string of characters, "each of the corresponding consecutive queries *lengthens the string by the additional characters*, to form a lengthening string for retrieving matching content from the server system." Appx1357 ('529 patent cl. 1) (emphasis added). Likewise, in the asserted claims here, the client sends a query with the additional characters of the input string. *See, e.g.*, Appx8460 ('024 patent cl. 1) ("the query messages represent the *lengthening string as additional characters are being input*" (emphasis added)).

In addition, in *Google*, as here, the same specification stated that "the protocol of *the present invention* provides a number of messages that allow the Client Quester to *send just the changes to the input buffer, instead of sending the entire input buffer*." Appx1351 ('529 patent at 20:11-14) (emphasis added); Appx8454 ('024 patent at 20:14-17) (same). Based on this passage, the *Google* court held that the specification limits the invention as a whole: the client sends "only the changes to

the input string that were not sent in any previous consecutive query." Appx948. The *Google* court explained that the specification's description of the "present invention" in this passage "indicates that the description is intended to apply to the invention as a whole, and not just a single embodiment." Appx948 (citing Appx1351 ('529 patent at 20:11-14)). That rationale was an essential part of the court's claim construction, which in turn was the sole basis for the non-infringement judgment. *See* Appx948 (citing *Trading Techs*. and *Honeywell*); Appx956-958 (stipulated judgment of non-infringement based on claim construction). MasterObjects vigorously disputed that issue, seeking reconsideration and appealing to this Court—but lost. *Supra* at 14-16.

MasterObjects now seeks to relitigate that same issue in this case, arguing (as it did in *Google*) that the same "just the changes" passage in the specification does not limit the invention to sending just the changes. *See* Appx8779-8780 (Opp. to SJ); Br. 29-30. Indeed, it rehashes its arguments (including the ones before this Court) at times nearly verbatim, again contending that the passage is merely "permissive," an "embodiment," and not central to the invention. Br. 29-35; *compare* Appx2298-2301 (*Google* CAFC reply brief) (arguing the "just the changes" passage is "permissive," an "embodiment," and "not a 'central' part of the invention"); Appx1003-1008 (*Google* CAFC opening brief) (similar).

The district court properly precluded MasterObjects from relitigating that issue. Appx8. This Court has applied collateral estoppel in similar circumstances. For example, in *Nestle*, this Court held that collateral estoppel precluded the patentee from relitigating the issue of whether the specification limited the claims. 884 F.3d at 1351-52. Because the patentee previously litigated that issue and lost, it was estopped from making the same argument as to related patents with the same specifications. *Id.* at 1352. This Court emphasized that "collateral estoppel is not limited 'to patent claims that are identical'" because "'it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply.'" *Id.* (citation omitted); *see also, e.g.*, *Ohio Willow Wood*, 735 F.3d at 1342; *Shell Petroleum*, 319 F.3d at 1338. So too here: *Google* estops MasterObjects from relitigating whether the specification requires the client to send "just the changes."

### 2. MasterObjects Cannot Evade *Google*

MasterObjects contends that the district court erred in finding the issues were the same. Br. 46-55. MasterObjects makes three arguments, each of which fails.

First, MasterObjects argues that the *Google* claim construction order was limited to the language of the particular "additional characters" terms in the '529 patent claims at issue in that case. *Id.* at 47-50. That is incorrect. In *Google*, the "additional characters" term was shorthand for limitations that described the lengthening input string that the client sends to the server—the same basic

functionality at issue here. *Supra* at 27; *see, e.g.*, Appx8460 ('024 patent cl. 1) ("the query messages represent the *lengthening string as additional characters are being input*" (emphasis added)). And the *Google* court expressly determined that the specification's discussion of the "present invention" (in the same passage at issue here) was "intended to *apply to the invention as a whole*, and not just a single embodiment"—and thus limited the scope of the invention (and thus any claimed client queries) to query messages that send just the changes. Appx948 (emphasis added); *see* Appx1351 ('529 patent at 20:11-14).

MasterObjects itself previously recognized as much. In appealing the *Google* decision, MasterObjects told this Court that the *Google* construction depended on the specification's description of the "present invention," and did *not* depend on any particular words in the claims. *See* Appx979 (*Google* construction was "limited by the specification"), Appx986 (*Google* construction "does not actually define any specific words in the claim" and not tied to a "particular claim 'phrase'"); *see also* Appx981-983, Appx1006. MasterObjects acknowledged that, under the *Google* construction, "the claims 'as a whole' mean 'each query consists only of the changes to the input string that were not sent in any previous consecutive query'" because the claims were "limited by the specification." Appx978-979. MasterObjects challenged the *Google* construction on precisely that basis—and did not prevail. The district court properly rejected MasterObjects' bid to revisit that same issue here.

Second, MasterObjects argues that the new terms are materially different from the old terms because, according to MasterObjects, "the new claims contain *none* of the words or terms critical to [the *Google* court's] construction." Br. 52; *see id.* at 50-55. That misses the mark because, as an initial matter, even the claim MasterObjects identified as exemplary—claim 1 of the '024 patent—contains overlapping claim language from the '529 patent including recitations of "queries" with "additional characters" of a "lengthening string." *See* Appx8460 ('024 patent cl. 1); Appx653 ('529 patent cl. 1). Moreover, regardless of the varying language used, the claims are directed to the same basic functionality and, more critically, the *Google* order was not confined to the claim language in that case—it ruled on the specification. As the district court explained, the absence of certain words in the claims here (e.g., "lengthen" or "modify") does not change the conclusion that the issue is the same as the *Google* case—because the same limiting specification is at issue here. Appx8; *see Nestle*, 884 F.3d at 1352 (collateral estoppel applies despite claim differences because, "[m]ore critically," the patent specifications' limiting language was the same).

MasterObjects further singles out claim 1 of the '866 patent, arguing that it requires that the "full partial string *must* be sent." Br. 53 (citing Appx8540 ('866 patent cl. 1)). But claim 1 of the '866 patent never mentions sending a "full partial string"; instead, it recites "sending a request message containing a string

representing an incomplete version of the search query." Appx8540. That says nothing about whether the message includes prior characters or only changed characters. And, in any event, it misses the point because, as discussed, the common specification was (and is) dispositive. *Supra* at 27-31.

Third, MasterObjects points to statements made during *inter partes* review (IPR) proceedings on the '024 patent brought by a non-party (eBay Inc.) as support for the material difference in the claims and issues. Br. 54-55. But the Board did not address the same issue or even provide a final construction of the "query message" terms (just a "preliminary" one). *See* Appx10; Appx1498, Appx1508-1511. The applicable claim construction standard in that IPR was the broadest reasonable interpretation. Appx1505 ("claim terms in an unexpired patent are given their broadest reasonable interpretation in the light of the specification" (citing *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 280-81 (2016)). Applying that standard in its institution decision, the Board preliminarily determined that the "query message" term was not limited to only the changes. Appx1510-1511. But the Board expressly chose *not* to issue a definitive construction because it was "not necessary to the resolution of any controversy" at that stage. Appx1511 ("parties' proposed constructions do not assist in resolving any controversy"). And, in any event, the IPR proceedings have no bearing on collateral estoppel here. *See, e.g.*, *Allergan, Inc. v. Sandoz, Inc.*, 681 F. App'x 955, 961 (Fed. Cir. 2017) (applying

collateral estoppel to later issued patent despite additional prosecution history after judgment). The IPR proceedings do not support MasterObjects.

In sum, the issue is identical to the one in the *Google* case, the issue was fully litigated and adjudged in the *Google* case, and the resolution was essential to the final judgment. Accordingly, as the district court held, "MasterObjects [is] collaterally estopped from asserting that the claims-in-suit do not send 'just the changes'" in the query messages. Appx8.

### B. Regardless, The District Court Properly Construed The "Query Message" Term

Even aside from collateral estoppel, the district court (like the *Google* court) correctly held that the specification's clear and consistent statements limit the scope of the claims: query messages must consist of only the changes to the lengthening input string.

#### 1. The Intrinsic Record Compels The District Court's Construction

Claim construction turns on the claim language and the specification, which is "the single best guide to the meaning of a disputed term." *Regents of the Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc)). In particular, "[w]hen a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp. v. Vonage*

*Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see also, e.g.*, *Regents of the Univ. of Minn.*, 717 F.3d at 936 (claim scope limited by description of "present invention"); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1353 (Fed. Cir. 2010) (same); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (same); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–45 (Fed. Cir. 2001) (same). A patentee "need not expressly state 'my invention does not include X' to indicate his exclusion of X from the scope of the patent because the patentee's choice of preferred embodiments can shed light on the intended scope of the claims." *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363-64 (Fed. Cir. 2016).

Here, the specification limits the scope of the claims. Appx8-10. The specification describes "the present invention" or "the invention" as requiring the client to send a query message to the server that consists of only the changes to the lengthening input string. *See, e.g.*, Appx8425 (Abstract) (same), Appx8432 (Fig. 4), Appx8448 (8:31-38), Appx8451 (13:32-36), Appx8453-8454 (18:45-19:33, 20:14-17), Appx8455 (21:4-8); Appx8553 ('073 patent at Fig. 6E), Appx8584 ('073 patent at 6:23-31). In particular, as discussed above, the specification explains that "the *protocol of the present invention* provides a number of messages that allow the Client Quester to *send just the changes* to the input buffer, instead of sending the entire input buffer." Appx8454 (20:14-17) (emphasis added). As the district court

held, this "description of the invention as a whole recites that the client sends just the changes to the server." Appx8. This Court found such language limiting in other cases, *see, e.g.*, *Verizon*, 503 F.3d at 1308; *Regents of the Univ. of Minn.*, 717 F.3d at 936; *Trading Techs.*, 595 F.3d at 1353; *Honeywell Int'l*, 452 F.3d at 1318, and the same is true here.

In addition, the common specification similarly states that "the *invention* provides a … search and retrieval system for sending a *character-by-character* string" to the server. Appx8448 (8:31-38) (emphasis added); *see also, e.g.*, Appx8425 (Abstract) (same). Such "[c]haracter-by-character communications inherently dictate sending only the changes." Appx9. Moreover, *every* embodiment reflects this fundamental feature. For example, Figure 4 illustrates how the system functions as the user types each character—i.e., by passing only the changes to the server, which then reassembles them as an increasingly lengthening string for backend processing. Appx8432 (Fig. 4); Appx8453-8454 (18:45-19:33); *supra* at 10-11; *see also* Appx1058 (prosecution of ancestor '529 patent) (stating server "receiv[es] each subsequent character"). Conversely, the specification does not provide any examples showing that the system sends anything other than the changes to the server. The specification, therefore, teaches that this characteristic—sending only the changes—is an integral part of the invention, and thereby limits the scope of the claims. *See, e.g.*, *Trs. of Columbia Univ.*, 811 F.3d at 1363-64. Based on the

intrinsic record, the district court correctly held that the "query message" consists of only the changes in the input string.

The extrinsic record confirms that construction. As the district court found, Mr. van den Oord, one of the named inventors, made clear that sending only the changes was central to the invention. Appx9. He explained that "the core of the invention" was "sending updates of queries" to the server rather than the entire query string. Appx547 (57:4-16); *see* Appx9 (quoting same). When describing the architecture, he explained that it was "the concept of sending updates of a query and that result set, for example, *as opposed to the whole thing all the time*." Appx549 (62:14-23) (emphasis added). Mr. van den Oord further explained that sending only the updates "allow[ed] the server to know what the user is typing as he or she is typing it." Appx549 (63:11-18). As the server receives the changes to the input string, it appends the additional characters to the lengthening string of user input. Appx554 (94:23-95:18). In this way, the claimed invention was intended to minimize the amount of data communicated between the client and server to speed up the search and retrieval. Appx551-552 (85:10-86:15).

### 2. MasterObjects Misinterprets The Claims

MasterObjects argues that certain claim language shows that the entire string is sent to the server and matched on the backend. Br. 17-22. This misinterprets the claims and misses the mark.

First, MasterObjects relies on claim language stating that the client sends a message "*represent[ing]* the lengthening string" (or representing "an incomplete search query") or sends "multiple query messages *corresponding* to multiple versions of [the] input." Br. 18-19 (emphasis altered) (quoting Appx8460 ('024 patent cl. 1); Appx8601 ('073 patent cl. 1); Appx8502 ('628 patent cl. 1)). According to MasterObjects, this "representing" and "corresponding" language somehow requires sending the "full partial string" as the user types. Br. 18. But nothing about this claim language says that previously sent characters are resent in subsequent queries; rather the claim language merely requires that the query message includes information *about* the input string, not repeated transmission of the "full partial string" as MasterObjects would have it. Indeed, markedly absent from the claim language is any express requirement that the query message contain or include the full partial string, including any previously sent characters. This absence is particularly striking in light of the *Google* decision—if MasterObjects were truly amending its claims in an effort to unequivocally traverse that decision, it could have expressly stated in its new claim language that previous characters were re-sent to the server (though such claims would not be supported by the written description). The lack of any such claim language speaks volumes.

Second, MasterObjects cites two claims that recite the client sending a string and then the server "matching … the string" to find search results. Br. 19-20

(quoting Appx8601 ('073 patent cl. 1); Appx8540-8541 ('866 patent cl. 1)). MasterObjects extrapolates from this language that the client must be sending the entire string, otherwise the server could not "match" it. But this too is a non-sequitur: none of this claim language requires resending characters to perform the recited matching, and there is nothing inherent in matching at the server that would require the client to resend previous characters. On their face, the claims permit the server to receive only changed characters but then append them to a lengthening string *at the server* before matching that string *at the server*. As depicted in Figure 4, for example, the client sends only the changed characters, but the server reconstructs the string ("abc") for matching on the backend. *See* Appx8432 (Fig. 4); Appx8453-8454 (18:45-19:33); *supra* at 10-11. Consistent with this, both claims are written with "comprising" transitional phrases (Appx8601 ('073 patent cl. 1); Appx8540 ('866 patent cl. 1)), which confirms they are open-ended and may include additional steps (e.g., for sending only the changes and then reconstructing and matching the string on the backend). *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003).

Moreover, as discussed, the specification requires the client to send only the changes and forecloses MasterObjects' contrary reading. *Supra* at 33-36; *see also Phillips*, 415 F.3d at 1315 (claims must be interpreted in light of specification).

### 3. MasterObjects Misinterprets The Specification

MasterObjects attempts to avoid the clear import of the specification in four ways. But those arguments misinterpret the specification and misapply the law.

First, MasterObjects contends that the "present invention" language the district court relied upon—"the protocol of the present invention provides a number of messages that allow the Client Quester to send just the changes to the input buffer, instead of sending the entire input buffer" (Appx8454 (20:14-17))—is merely permissive and discloses "two alternatives." Br. 25; *see also id.* at 29-35. Specifically, MasterObjects argues that the word "allow" in this passage establishes that sending just the changes is permissive and "instead" indicates that the entire input can be resent. Br. 25.

That misreads the specification. As an initial matter, the second embodiment MasterObjects imagines (in which changes are resent) is never mentioned in the specification expressly or by implication. If this were truly an intended alternative embodiment, one would expect a figure, a paragraph, or even sentence saying so, but none exists in the asserted patents.

Moreover, on its face, the specification's use of "allow" and "instead of" in this key passage supports Meta, not MasterObjects. Specifically, this passage makes plain that the point of the "present invention" is to enable ("allow") the client "to send *just* the changes *instead of*" sending the entire input including all of the

previously sent characters. *See* Appx8454 (20:14-17). And MasterObjects has no answer for the fact that the specification describes this functionality as "the protocol *of the present invention*" without limiting it to any specific example or embodiment. Appx8454 (20:14-17) (emphasis added); *see Trading Techs.*, 595 F.3d at 1353; *Honeywell Int'l*, 452 F.3d at 1318; *supra* at 34-35. Thus, the invention must have that capability.

Second, following suit, MasterObjects contends that the specification does include examples in which the client sends the entire string including previously sent characters. Br. 22-26. But the snippets that MasterObjects cites show no such thing.

MasterObjects first points to an example in which the client sends "character-by-character" strings. *Id.* at 22-23. But, here again, as discussed above and as the district court held, that supports the district court's construction, not MasterObjects'. *Supra* at 35; Appx9.

MasterObjects next argues that the specification describes sending more than one character at one time. Br. 24. But, as the district court held, the specification never states that any of those characters are *re-sent* to the server, and sending multiple characters at one time is wholly consistent with the district court's construction. Appx9. Using the "apple" example above, a client could send "ap" in one transmission" and then "p" in a second transmission and thereby send multiple characters at one time ("ap") and send only the changed character ("p") in a

subsequent query. As another example, the specification explains that "when a user *replaces* the contents of an entry field with a *new string*, the Client may *then* send the entire string all at once to the Server, instead of character by character." Appx8450 (12:7-10) (emphases added). This example describes sending the entire new (or changed) string, but does not describe *re*sending the prior query string or any previously sent characters.

MasterObjects also cites the specification's discussion of sending the "query message 'ab.'" Appx8453-8454 (18:67-19:2); *see* Br. 25 (quoting same). According to MasterObjects, this shows that the client sends the entire message (i.e., "ab") not just the additional character. If this were true, it would merely show the same example discussed above of sending two characters ("ab") in a first query and then sending only the new character ("c") in a subsequent query without resending any characters twice—a result entirely consistent with the court's construction.

But, in fact, MasterObjects misreads the passage it relies on. That passage actually refers to the message that the *server* reassembles for backend processing *after* the client incrementally sends only the changed characters. In particular, as discussed and as depicted in Figure 4, the specification explains that: (1) as the user inputs the string, the client sends to the server just the additional characters ("a" then "b" then "c"), (2) the server receives those additional characters and reassembles the input string ("ab" then "abc"), and (3) the server uses the reassembled string on the

backend for processing and updating results as the string lengthens. *See* Appx8432 (Fig. 4), Appx8453-8454 (18:45-19:33); *supra* at 10-11. The client never resends the full string (e.g., "abc") to the server.

Undeterred, MasterObjects further contends that this example supports its position because the specification elsewhere states that a server can act as a client. Br. 26. That is irrelevant. In the example discussed, the component that is sending the reassembled string to the backend is *part of the server* (indeed, it is called the "*Server* Quester"), *see* Appx8453-8454 (18:45-19:33), and is not acting as the claimed client. *See* Appx8460 (cl. 1).

Third, MasterObjects contends that the specification contains no "expressions of manifest exclusion or restriction" that amount to disavowal. Br. 29-30 (quoting *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019)). That argument fails. An express disavowal is not required so long as "the scope of the invention is clearly stated in the specification." *Trs. of Columbia Univ.*, 811 F.3d at 1364. And, as discussed, the specification here—including its express discussion of the present invention as requiring the client to send only the additional characters and its failure to include any embodiments to the contrary—informs and limits claims scope just as the specifications did in cases like *Trading Technologies*, *Honeywell*, and *Trustees of Columbia University*. *Supra* at 33-36.

Fourth, and finally, MasterObjects relies on the Board's decision instituting review in the eBay *IPR*. Br. 27-29. But, as the district court found (and as discussed above), the Board's initiation decision "carries little persuasive weight; it was not a final decision, and it employed the broadest reasonable interpretation standard." Appx10; *see supra* at 32-33. Even if MasterObjects' statements from the IPR were relevant here, they cannot overcome the clear import of the specification: "Where, as here, the written description clearly identifies what his invention is, an expression by a patentee during prosecution that he intends his claims to cover more than what his specification discloses is entitled to little weight." *Honeywell*, 452 F.3d at 1319; *see also, e.g.*, *Biogen, Inc. v. Berlex Laboratories, Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003) ("Representations during prosecution cannot enlarge the content of the specification ….").

In sum, the specification is limiting and supports the client sending only the changes of the input string as the user types a lengthening string. Thus, the district court properly construed the claims in light of the intrinsic evidence.

### C. Meta Does Not Infringe The "Query Message" Terms Under The District Court's Construction

Meta's Typeahead feature does not infringe the asserted claims under the proper construction of the "query message" term because it resends the entire string as the user types. MasterObjects does not dispute that there is no evidence of Meta's Typeahead feature sending only the changes. Appx10; *see also* Appx6982,

Appx7329-7337. Thus, the district court's summary judgment of non-infringement should be affirmed.

## II. META DOES NOT INFRINGE THE "ASYNCHRONOUS" LIMITATIONS

Separately, the district court also correctly held that Meta's accused Typeahead feature does not infringe the asserted claims based on the proper construction of the "asynchronous" terms. Each asserted claim recites "asynchronous" communication between the server and the client. Appx11.[5] At MasterObjects' request, the district court construed the term to mean "each side of the communication is free to communicate without waiting for the other side." Appx11-16. And the district court properly held that Meta's Typeahead servers do not communicate without waiting for requests from the clients—and thus do not infringe.

### A. The District Court Properly Construed "Asynchronous"

The claimed invention provides that the client and server can "asynchronously" send messages to each other. Appx11; *see, e.g.,* Appx8460 (cl. 1: server " *asynchronously* receiv[es] and respond[s] to the query messages from the client"), Appx8461 (cl. 32: system allows "*asynchronous* communication between the server system and a client object"), Appx8461 (cl. 35: client "*asynchronously*

[5] Some claims recite the server or client "asynchronously" communicating with each other, and the parties did not distinguish among the claims.

send[s] multiple query messages" to the server) (emphases added). The Texas court, adopting a proposal by MasterObjects, construed the "asynchronous" terms to mean: "Each side of the communication is free to communicate without waiting for the other side." Appx11. The California court adopted this construction and explained that, under this construction, "*the server must be able to initiate communications*." Appx11.

### 1. The Server Must Be Able To Freely Communicate Without Waiting For The Client

The intrinsic record supports the district court's construction by consistently making clear that the server must be able to initiate communications without waiting for the client. The specification defines the claimed asynchronous system as "bi-directional and asynchronous, *in that* both the Client and *the Server can initiate communications at any moment in time*." Appx8450 (12:24-26) (emphasis added). The language "in that" signals that the subsequent language defines what "asynchronous" means, without limitation as to a particular embodiment, as this Court has held in similar contexts. *See Edwards Lifescis. LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009) ("[T]he specification's use of 'i.e.' signals an intent to define the word to which it refers … and that definition is not limited to the embodiment being discussed."); *Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mutual Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004) (rejecting "formalis[tic]" argument that "lexicography requires a statement in the form 'I

define to ___ mean ___'"). Thus, as the district court found, this language expressly requires the server to be "able to initiate communication with the client" and applies to the purported invention as a whole, not just particular embodiments. Appx12.

Likewise, the specification elsewhere describes both the server and the client initiating communications without waiting for the other side. For example, the specification describes the server unilaterally sending updates to the client. *See, e.g.*, Appx8450 (12:32-38) ("An example of a communication initiated by the Server is updating the information provided to the client. … As information changes in the database, the Server sends an updated version of that information to the Client."); Appx8453 (17:54-57) ("Questlets can be used to display current stock quotes, new flashes, advertisements, Internet banners, or data from any other real-time data push Service."). The specification also explains that when the results are incomplete, the server may "automatically 'push' updated information matching the previous query to the Client as it becomes available." Appx8454 (19:7-13). And the specification gives other examples in which the server "pushes" unrequested data to the client. *See* Appx8448 (8:55-57) ("Data can also be presented to a client without user input, i.e. the data is automatically 'pushed' to the client."); Appx8454 (19:9-14),

Appx8458 (28:8-12). These examples show that the server can, "*without prompting*, initiate a further response to the client's request." Appx13.[6]

In addition, during prosecution of the ancestor '529 patent, MasterObjects described asynchronous the same way it does in the specification: "since the system is *asynchronous*, both the client and the *server can initiate communications at any moment in time*." Appx1081 (second emphasis added); *see* Appx12. The intrinsic record, therefore, amply supports the district court's construction.

Moreover, as noted, MasterObjects itself proposed this construction, under which the server must be "free to communicate without waiting for the [client]." That necessarily means that the server must be able to initiate communications. MasterObjects' claim construction briefing confirms as much. For example, MasterObjects acknowledged that, under its construction, (1) "asynchronous communications can *start … at any time*"; (2) the server and client are "*each … free* to send messages *on its own timetable*"; and (3) neither needs to "wait its turn"; and both sides are "*free* to talk *without relying on a clock or other coordination mechanism* to synchronize their communications with one another." Appx1136-1138 (emphases added); *see also* Appx8606-8607 (162:21-163:5) (MasterObjects'

[6] The district court also found "persuasive" the *Google* court's similar holding that, based on the common specification, the server must be able "'to initiate communications.'" Appx14 (quoting Appx939): *see* Appx937-939.

expert confirming the "side[s]" of the communication are the client and the server). These admissions are consistent with the specification and prosecution history, which requires both the server and the client to be able to freely initiate communications with each other, including by initiating, without prompting, further responses to a client's request or by "pushing" unrequested data in the first instance.

### 2. MasterObjects' Contrary Arguments Are Unavailing

MasterObjects contends that the "asynchronous" terms "are not about who starts the communication," but merely about "how the communication is conducted once it has begun." Br. 37. According to MasterObjects, the claims "require a system where *the client* can initiate, while not requiring that ability of *the server*." *Id.* at 38 (emphases altered). That argument fails for three reasons.

First, that is not what MasterObjects' construction proposed. Again, on its face, MasterObjects' construction, which the Texas and California courts adopted, states that "*each side* of the communication is free to communicate *without waiting for the other side*." That means that "*each side*" (not just the client as MasterObjects would now have it) *can* "start[] the communication." *Id.* at 37. As discussed, MasterObjects' own arguments and expert testimony in the district court confirmed as much—and that is what the specification requires. *Supra* at 44-48. For the same reasons, MasterObjects' assertion that the "specification does not redefine or

disavow" the meaning of the asynchronous terms, Br. 39-46 (capitalization normalized), fails.

Second, MasterObjects' proposal would render the term "asynchronous" superfluous in claims that require the client to communicate first. The client-initiated communication must still be performed asynchronously, which requires that *each side* is *free* to communicate without waiting for the other side. Thus, for example, the server must be free to initiate multiple responses to a client request, and not constrained to a single response to a single query. The claims should be interpreted to give meaning to all terms in the claim. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-51 (Fed. Cir. 2006) (explaining the purpose of patent claims); *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 809-10 (Fed. Cir. 2021) (collecting cases). The district court's interpretation of the construction gives meaning to all terms in the claim, whereas MasterObjects' reading of its proposed construction renders "each side" meaningless.

Third, MasterObjects argues that claim differentiation supports its interpretation of the construction. Br. 38. Specifically, MasterObjects relies on the language of dependent claim 30 of the '024 patent, which states: "wherein the server system automatically sends messages containing new results to the client object as updated data in response to a previous query becomes available." Appx8461. MasterObjects' interpretation—that "each side" thus means only the client needs to

be capable of initiating communication in claims other than claim 30—improperly broadens the scope of independent claim 1 (and all other claims). "Each side" means *each side* (i.e., both the client and the server) must be capable of initiating communication—in all claims, not just claim 30.

MasterObjects argues by analogy that if claim 1 describes a car with four tires, and dependent claim 2 adds a radio, then claim 1 must not require a radio. But that analogy does not capture the relationship between claims 1 and 30. Dependent claim 30 recites a particular way of *using* the server's communication-initiation capability to perform a specific task (sending messages as updated data becomes available). This relationship is more akin to a car with a radio (claim 1) and adding that the radio be tuned to a specific station (claim 30). Claim 30 *presumes* (and only works if) the server in claim 1, from which it depends, is capable of communicating with the client without waiting for the client. In other words, claim 30 supports the *district court's* interpretation, not *MasterObjects'*: if the server in claim 1 were not already *capable* of initiating communications without waiting for the client, it could not later be *required* to do so in claim 30, which depends from claim 1.

The district court properly held that "each side of the communication is free to communicate without waiting for the other side" means that the server is capable of communicating with the client without waiting for the client.

### B. Meta Does Not Infringe The "Asynchronous" Limitations Under The District Court's Construction, And MasterObjects Does Not Contend Otherwise

The district court correctly held that, thus construed, Meta's accused Typeahead server does not infringe because it is not able to initiate communication at any time. Appx14-16. There was no material fact in dispute on that score. As the district court explained, "MasterObjects … provided no evidence of that functionality in the accused product" and the record evidence allowed only one conclusion: "Typeahead is a rote call-and-response system where the server is not free to communicate spontaneously." Appx14-15; *see* Appx6976-6978; Appx8734 (154:15-157:19) (MasterObjects' expert admitting that Typeahead communicates only in response to a client request); Appx8727-8729 (¶¶ 50, 58-59) (confirming that Typeahead cannot initiate multiple responses to a client request). MasterObjects does not challenge that holding on appeal.

Thus, the district court correctly granted summary judgment that Meta's Typeahead feature does not infringe the asserted claims based on the proper construction of the "asynchronous" terms.

## III. THE DISTRICT COURT PROPERLY REVISITED THE TEXAS COURT'S UNEXPLAINED PRELIMINARY CONSTRUCTIONS

MasterObjects argues that Meta was required to file a motion for reconsideration of the Texas claim constructions in the California court. Br. 55-60. MasterObjects is incorrect.

A motion for reconsideration was not required for the district court to make its own assessment of any claim constructions. "[A] district court may (and sometimes must) revisit, alter, or supplement its claim constructions (subject to controlling appellate mandates) to the extent necessary to ensure that final constructions serve their purpose of genuinely clarifying the scope of the claims for the finder of fact." *Papst Licensing GmbH & Co. KG v. Fujifilm Corp. (In re Papst Licensing Dig. Camera Patent Litig.)*, 778 F.3d 1255, 1261 (Fed. Cir. 2015). Indeed, "a district court may engage in claim construction during various phases of litigation, not just in a *Markman* order" and this Court has "recognized that district courts may engage in 'rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.'" *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) (citation omitted). No formal motion for reconsideration is required: a district court is "well within its power to clarify, supplement, and even alter its construction … in [a] summary judgment order"—even "*sua sponte*." *Level Sleep LLC v. Sleep No. Corp.*, No. 2020-1718, 2021 WL 2934816, at *3 (Fed. Cir. July 13, 2021). Under

this Court's precedent, the California court was free to revisit, alter, or supplement the claim constructions in this action—and properly did so after affording the parties full briefing and argument on the issues.

That was especially appropriate here because the Texas court did not provide any reasoning—in a written order or otherwise—supporting its claim constructions. This Court has explained that "[f]or an appellate court to fulfill its role of judicial review, it must have a clear understanding of the grounds for the decision being reviewed." *Gechter v. Davidson*, 116 F.3d 1454, 1457 (Fed. Cir. 1997). Without a written opinion that explains the underlying fact findings, "meaningful review is not possible, frustrating the very purpose of appellate review." *Id.*; *see also Tris Pharma, Inc. v. Actavis Laboratories FL, Inc.*, 755 F. App'x 983, 988 (Fed. Cir. 2019). This Court has vacated district courts' judgments that are "absolutely devoid of any discussion of claim construction." *Gechter*, 116 F.3d at 1458 (quoting *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 791 (Fed. Cir. 1995)); *see also CSR, PLC v. Skullcandy, Inc.*, 594 F. App'x 672, 678 (Fed. Cir. 2014). Because the California court was required to explain its own findings of fact to support the basis for the claim constructions it would ultimately issue to a jury, the court had to make its own assessment of those constructions, especially because the Texas court provided none.

MasterObjects (at 58) cites two district court cases denying motions for reconsideration of claim constructions, but those cases do not compel a district court

to require a motion for reconsideration be brought in every instance before revisiting claim construction, and MasterObjects cites no case of this Court standing for that novel proposition. *See Snyders Heart Valve LLC v. St. Jude Med.*, Civil No. 18-2030, 2020 WL 1445835, at *1, *4 (D. Minn. Mar. 25, 2020); *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C 12-00852, 2012 WL 1534891, at *3 (N.D. Cal. May 1, 2012). Moreover, it is notable that, unlike the instant case, both of the cases MasterObjects cites had prior written claim construction orders setting out the court's analysis. *Id.* In contrast, here, the Texas court provided no written claim construction order or opinion—or any reasoning whatsoever—for its initial constructions. MasterObjects (at 58-59) also cites *Christianson v. Colt Industries Operation Corp.*, 486 U.S. 800 (1988), but misinterprets the Court's reasoning. While the Supreme Court acknowledged the "law-of-the-case" doctrine, the Court explained that the doctrine does not limit the court's power to revisit prior decisions. 486 U.S. at 817.

Moreover, it is *MasterObjects* that sought to reconstrue the construction it asked for, and the parties thus disagreed over the proper interpretation of the Texas court's (unexplained) construction of "asynchronous." Under *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." 521 F.3d 1351, 1362-63 (Fed. Cir. 2008). The court properly did so

here. *See, e.g.*, *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372-73 (Fed. Cir. 2016) (explaining that interpretation of a construction is "a legal question" for the court (citation omitted)); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 977-79 (Fed. Cir. 2021) (same). MasterObjects attempted to interpret the Texas court's construction, but ignored its express language. The district court correctly rejected that attempt.

Thus, Meta was not required to file a motion for reconsideration and the district court was free to make its own assessment of the claim constructions. The district court properly construed the claims and granted summary judgment of non-infringement based on (1) the construction of the "query message" terms (either via collateral estoppel or on the merits) and (2) the construction of the "asynchronous" terms. This Court should affirm on either, or both, of these grounds.

## CONCLUSION

The district court's judgment should be affirmed.

Dated: February 15, 2023

Respectfully submitted,

*Gabriel K. Bell*

Gabriel K. Bell
Rachel W. Cohen
Tiffany C. Weston
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Jeffrey G. Homrig
Latham & Watkins LLP
301 Congress Avenue
Suite 900
Austin, TX 78701
(737) 910-7300

Douglas E. Lumish
Latham & Watkins LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Joseph H. Lee
Latham & Watkins LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Federal Circuit Rule 32(b)(3), I hereby certify that the foregoing brief complies with the type-volume limitations in Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b)(1) because it contains 12,330 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), (6) because this brief was prepared using Microsoft Word 365 in 14-point Times New Roman font.

*/s/ Gabriel K. Bell*
Gabriel K. Bell