**Case No. 23-1097**

*In the*

# United States Court of Appeals

*for the*

# Federal Circuit

MASTEROBJECTS, INC.,
*Plaintiff-Appellant*

v.

META PLATFORMS, INC.,
*Defendant-Appellee*

*Appeal from the United States District Court for the Northern District of California in Case No. 3:21-cv-05428-WHA, Judge William H. Alsup*

## REPLY BRIEF OF APPELLANT MASTEROBJECTS, INC.

SPENCER HOSIE
DIANE S. RICE
DARRELL R. ATKINSON
HOSIE RICE LLP
505 Sansome Street, Suite 1575
San Francisco, California 94111
Telephone: (415) 247-6000
shosie@hosielaw.com
drice@hosielaw.com
datkinson@hosielaw.com

*Attorneys for Plaintiff-Appellant, MasterObjects, Inc.*

March 22, 2023

COUNSEL PRESS · (213) 680-2300 PRINTED ON RECYCLED PAPER

# TABLE OF CONTENTS

**Page**


I. THE DISTRICT COURT ERRED IN REVISITING ISSUES LONG SETTLED BY PRIOR COURT ORDER ..... 1

A. The Law on the Law of the Case ..... 1

B. There Was No Unresolved Claim Issue ..... 5

C. A Written Explanation Was Not Required ..... 7

D. Fairness ..... 9

II. NO COLLATERAL ESTOPPEL ..... 10

A. The Full Reach of the Specification Was Not Previously Decided ..... 10

B. The Different Claim Language Makes a Difference ..... 13

III. QUERY MESSAGES ..... 15

A. Meta Ignores the Plain Claim Text ..... 15

B. Meta Reinvents the Common Specification ..... 17

C. The '073 Specification Supports MasterObjects ..... 19

IV. ASYNCHRONOUSLY ..... 21

A. The Issue is the Meaning of Asynchronously, Not "Each Side" ..... 21

B. Meta Renders Claim Language Superfluous and Reads in a Dependent Claim Requirement ..... 22

C. Asynchronously Has Its Ordinary Meaning—There is No Lexicography Here ..... 23

V. CONCLUSION ..... 27

# TABLE OF AUTHORITIES

**Cases** **Page**

*Acer, Inc. v. Tech. Properties Ltd.*,
No. 5:08-cv-00877 PSG, 2013 WL 4515545 (N.D. Cal. Aug. 21, 2013).......5

*AFG Indus., Inc. v. Cardinal IG Co., Inc.*,
375 F.3d 1367 (Fed. Cir. 2004) ..........2, 4

*Akamai Tech., Inc. v. Limelight Networks, Inc.*,
805 F.3d 1368 (Fed. Cir. 2015) ..........24

*Ancora Tech., Inc. v. Apple, Inc.*,
744 F.3d 732 (Fed. Cir. 2014) ..........24

*Apple Inc. v. Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) ..........18

*Barkan Wireless Access Tech., L.P. v. Cellco Partnerships*,
748 Fed. App'x 987 (Fed. Cir. 2018) ..........27

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1998)..........2, 5, 7, 8

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) .......... 3-4

*Continental Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019) ..........18

*CSR, PLC v. Skullcandy Inc.*,
594 Fed App'x 672 (Fed. Cir. 2014) ..........8

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
836 F.2d 1320 (Fed. Cir. 1987) ..........4

*Dixon v. Shinseki*,
741 F.3d 1367 (Fed. Cir. 2014) ..........1

*e.Digital Corp. v. Futurewei Technologies, Inc.*,
772 F.3d 723 (Fed. Cir. 2014) ..........14

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) ..........6

*Gechter v. Davidson*,
116 F.3d 1454 (Fed. Cir. 1997) .................................................................. 7-8

*Hughes Aircraft Co. v. U.S.*,
86 F.3d 1566 (Fed. Cir. 1996) .......................................................................2

*In re Chamber of Commerce of the U.S.*,
675 F.3d 1297 (Fed. Cir. 2012) .....................................................................7

*In re Papst Licensing Digital Camera Patent Litigation*,
778 F.3d 1255 (Fed. Cir. 2015) .....................................................................3

*Level Sleep LLC v. Sleep No. Corp.*,
No. 2020-1718, 2021 WL 2934816 (Fed. Cir. July 13, 2021) ........................3

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) .....................................................................17

*MasterObjects, Inc. v. Google, Inc.*,
No. C 11-1054 PJH, 2013 WL 2319087 (N.D. Cal. May 28, 2013)............17

*N. Telecom Ltd. v. Samsung Elec. Co., Ltd.*,
215 F.3d 1281 (Fed. Cir. 2000) ...................................................................27

*Optical Disc Corp. v. Del Mar Avionics*,
208 F.3d 1324 (Fed. Cir. 2000) .....................................................................8

*Ormco Corp. v. Align Tech., Inc.*,
498 F.3d 1307 (Fed. Cir. 2007) .....................................................................8

*Pelican Int'l Inc. v. Hobie Cat Co.*,
No. 20-cv-2390-BAS-MSB, 2022 WL 298959 (S.D. Cal. Feb. 1, 2022).....25

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...................................................................25

*Snyders Heart Valve LLC v. Jude Medical*,
No. 18-2030 (JRT/DTS), 2020 WL 1445835 (D. Minn. Mar. 25, 2020) ...4, 5

*Suel v. Sec'y of Health and Human Serv.*,
192 F.3d 981 (Fed. Cir. 1999) .................................................................. 1-2

*Surgalign Spine Technologies, Inc. v. LifeNet Health*,
-- Fed. App'x --, 2022 WL 1073606 (Fed. Cir. Apr. 11, 2022) ....................27

*Texas Am. Oil Corp. v. U.S. Dept. of Energy*,
44 F.3d 1557 (Fed. Cir. 1995) .......................................................................7

*Thorner v. Sony Computer Entertainment Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ....................................................................15

*Toro Co. v. White Consolidated Indus., Inc.*,
383 F.3d 1326 (Fed. Cir. 2004) .................................................................. 3-4

*Trimble Inc. v. PerDiemCo LLC*,
997 F.3d 1147 (Fed. Cir. 2021) ......................................................................4

*Tris Pharma, Inc. v. Actavis Laboratories FL, Inc.*,
755 F. App'x 983 (Fed. Cir. 2019) .................................................................9

*U.S. Tobacco Cooperative Inc. v. Big South Wholesale of Virginia*,
899 F.3d 236 (4th Cir. 2018) ..........................................................................8

*Wavetronix LLC v. EIS Electronic Integrated Sys.*,
573 F.3d 1343 (Fed. Cir. 2009) ......................................................................8

*Williamson v. Citrix Online LLC*,
No. CV11-02409 AHM (JLMx),
2012 WL 12884842 (C.D. Cal. Nov. 8, 2012) ........................................... 4-5

**Rules**

Fed. Cir. Rule 36 ........................................................................................ 11

N.D. Cal. Civ. L.R. 7-9 ................................................................................ 10

MasterObjects, Inc. ("MasterObjects") submits this Reply Brief, which addresses the arguments Meta Platforms, Inc. ("Meta") made and did not make.

## I. <u>THE DISTRICT COURT ERRED IN REVISITING ISSUES LONG SETTLED BY PRIOR COURT ORDER</u>.

### A. <u>The Law on the Law of the Case</u>.

Meta contends that "[u]nder this Court's precedent, [Judge Alsup] was free to revisit … [Judge Albright's] claim constructions … and properly did so …." Meta Response Brief ("R.Br.") at 52-53. Meta is mistaken. This Court's law-of-the-case / reconsideration precedent does not afford a transferee judge unfettered discretion to substitute his or her opinion for that of the prior judge on a fully litigated and settled issue. Meta made no showing warranting a new claim ruling after all discovery closed and weeks before trial: Meta said nothing of new facts nor new law nor manifest error and resulting injustice. And the District Court spoke to none of these issues. Only one thing changed here: the judge's identity.

As this Court has explained, the law of the case "doctrine operates to protect the settled expectations of the parties and promote orderly development of the case. It 'ensures judicial efficiency and prevents endless litigation. Its elementary logic is matched by elementary fairness – a litigant given one good bite at the apple should not have a second.'" *Suel v. Sec'y of Health and Human Serv.*, 192 F.3d 981, 984-985 (Fed. Cir. 1999) (non-patent case) (citations omitted); *see also Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) ("Motions for reconsideration do

not afford litigants the opportunity to take a 'second bite at the apple'…") (non-patent case). Accordingly, "a court will generally refuse to … reconsider what has already been decided …." *Suel*, 192 F.3d at 985. As the Supreme Court put it: "as a rule courts should be loathe to [revisit decisions] in the absence of **extraordinary circumstances** ….'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (emphasis added).

While Meta dismisses *Christianson*, *see* R.Br. at 54, Federal Circuit cases follow the Supreme Court's "extraordinary circumstances" rule. *See, e.g., Hughes Aircraft Co. v. U.S.*, 86 F.3d 1566, 1576 (Fed. Cir. 1996), *vacated on other grounds, U.S. v. Hughes Aircraft Co.*, 520 U.S. 1183 (1997) (quoting *Christianson* and applying law of the case to infringement). Under the proper standard, within one case, a district judge cannot overrule an earlier judge on an issue already litigated and decided simply because the new judge might have reached a different conclusion. *See id.* at 1577. In short, the law of the case is to be adhered to absent "extraordinary circumstances." *Christianson*, 486 U.S. at 817. No such circumstances exist here.

Recognized exceptions to the law-of-the-case / reconsideration principles include: (1) new facts; (2) a change in the law; and (3) clear error that would work a manifest injustice. *See AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 375 F.3d 1367, 1372 (Fed. Cir. 2004). In the context of claim construction, this Court has

recognized a fourth exception, a lingering claim scope dispute or ambiguity. *See In re Papst Licensing Digital Camera Patent Litigation*, 778 F.3d 1255, 1261 (Fed. Cir. 2015).[1] As MasterObjects explained in its Opening Brief ("O.Br."), *see* O.Br., § VI.E., none of these exceptions apply here.

Undeterred, Meta suggests that this Court affords district courts unlimited discretion to upend settled claim construction issues; it posits that claim issues are subject to different rules. As Meta put it, "'district courts may engage in 'rolling claim construction, in which the court revisits and alters its interpretation … as its understanding of the technology evolves.''" *See* R.Br. at 52, citing *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349 (Fed. Cir. 2006) & *Level Sleep LLC v. Sleep No. Corp.*, No. 2020-1718, 2021 WL 2934816 (Fed. Cir. July 13, 2021).

Meta's cases do not support this proposition. These cases do not even suggest, much less say, that the Federal Circuit has a special rule that exempts claim issues from the Supreme Court's "extraordinary circumstances" law. If the law were indeed as Meta suggests, Meta would have been far more explicit in citing and quoting cases. This Court does **not** exempt claim issues from the law of

[1] The *In re Papst / O2 Micro* case line may be less of an exception and more of an acknowledgement that while courts may believe they ruled on all claim issues, they later find that some issues were not considered prior. *Cf. Toro Co. v. White Consolidated Indus., Inc.*, 383 F.3d 1326, 1335-36 (Fed. Cir. 2004) (rejecting argument that a prior claim ruling barred litigating the disclosure-dedication rule, because that issue was not actually decided, while applying law of the case to the prior construction of a term).

the case doctrine. *See AFG Indus.*, 375 F.3d at 1372 & *Toro*, 383 F.3d at 1335-36 (Federal Circuit applying law of the case to its own constructions); *see also Del Mar Avionics, Inc. v. Quinton Instrument Co*., 836 F.2d 1320, 1324 (Fed. Cir. 1987) (upholding district court application of law of the case to Ninth Circuit affirmed construction). Nor is there any policy reason to do so. *Cf. Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021) ("'[[P]]atent law is governed by the same ... procedural rules as other areas of civil litigation'… [T]he Court has repeatedly rejected special rules for patent litigation in the context of rules governing civil litigation generally").

What Meta's cases stand for is the unremarkable proposition that **if** extraordinary circumstances **do** exist, *e.g.*, new facts or a prior construction that failed to resolve a dispute, the court may reconsider a prior ruling.[2] *See Williamson v. Citrix Online LLC*, No. CV11-02409 AHM (JEMx), 2012 WL 12884842, at *1 (C.D. Cal. Nov. 8, 2012) (rejecting an attempt to "skirt" a reconsideration local rule and explaining that "neither of the Federal Circuit cases [of which *Conoco* was one]… directs courts to ignore otherwise applicable standards for motions for reconsideration" when asked to revisit claims); *Snyders*

[2] Additionally, in *Conoco*, the district court construed the term for the *first time*, sua sponte, in its Findings of Facts and Conclusions of Law; this was not the same cud chewed twice. *See* 460 F.3d at 1359.

*Heart Valve LLC v. St. Jude Medical*, No. 18-2030 (JRT/DTS), 2020 WL 1445835 *4 (D. Minn. Mar. 25, 2020).[3]

In tacit acknowledgment that reconsideration principles apply, and that Judge Alsup accordingly needed to find an "extraordinary circumstance" to reverse Judge Albright, Meta contends that: (1) MasterObjects raised a new disputed scope issue as to the prior "asynchronously" construction, R.Br. at 5, 22 & 54-55; and (2) the lack of a prior written order justified reconsideration. R.Br. at 53-54. Meta is wrong on both points.

**B. <u>There Was No Unresolved Claim Issue.</u>**

As set forth in MasterObjects' Opening Brief, *see* O.Br., § VI.E.i., there was no claim construction ambiguity here. The parties squarely briefed one issue on the asynchronously term: whether it included a server initiation ("server push") requirement (a requirement where the server has the ability to start a user search). ***All of the asynchronously briefing focused on this point specifically***. In adopting MasterObjects' construction, Judge Albright necessarily rejected Meta's server push restriction. A party may not manufacture ambiguity by rearguing a claim issue already litigated and resolved. Were it otherwise, no issue could be resolved

---

[3] Meta suggests that *Snyder's* recognition of *Christianson* is anomalous. *See* R.Br. at 53-54. But, Judge Alsup himself has applied reconsideration principles to claim construction issues, *see* O.Br. at 58, as have other judges. *See, e.g., Williamson*, 2012 WL 12884842, at *1; *Acer, Inc. v. Tech. Properties Ltd.*, No. 5:08–cv–00877 PSG, 2013 WL 4515545, at *3 (N.D. Cal. Aug. 21, 2013).

during a case, and the parties would be walking down an endless house of mirrors. As this Court put it: "Restating a previously settled argument does not create an 'actual dispute regarding the proper scope of the claims' within the meaning of *O2 Micro*." *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010).

To confirm that server initiation was the sole "asynchronously" dispute resolved prior, this Court need read no further than MasterObjects' claim brief's first line on this issue: "[Meta] contends that …'asynchronously' impose[s] a limitation that requires the server to be able to 'initiate'…." *See* Appx1136, *see also* Appx1140 ("none of these claims state or imply that the server must initiate"), Appx1670 ("None of these claims say the server initiates"), Appx2158 ("[T]he parties' dispute centers on **a single issue**: whether this term must be further limited to require the server to be able to 'initiate'") (emphasis added).

Meta, too, focused on the server-initiation issue. Meta told Judge Albright that MasterObjects' construction was wrong because it did not contain Meta's server initiation requirement. *See* O.Br. at 57, Appx364 ("These constructions omit key concepts … **that both client and server can initiate** …") (emphasis added).

On this briefing, Judge Albright then adopted MasterObjects' construction resolving the server initiation issue in MasterObjects' favor. Judge Alsup, two

years later, then reconsidered the exact (and sole) asynchronous issue—server-initiated communication—as his Order makes clear: "Meta … *contends that asynchronous means that the server must be able to initiate communications*. This order agrees." Appx11, *see also* Appx14 ("it necessarily follows that the server must itself be able to initiate"). Absent new facts or law or a showing of manifest error, Judge Alsup was not at liberty to second guess Judge Albright. Were the law otherwise, chaos would ensue.

### C. A Written Explanation Was Not Required.

Judge Albright did not write an opinion. But this does not exempt this case from reconsideration principles. As the Supreme Court, and this Court, have explained, it is a prior judge's **rulings**, not explanations, that are subject to review. *See Christianson*, 486 U.S. at 817; *Texas Am. Oil Corp. v. U.S. Dept. of Energy*, 44 F.3d 1557, 1562 (Fed. Cir. 1995); *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 1302 (Fed. Cir. 2012) (Explaining that the case did not present the kind of "critical omissions" present in *Gechter v. Davidson*, 116 F.3d 1454, 1457 (Fed. Cir. 1997) (cited by Meta), and that, "[i]n any event …"[this Court] sit[s] to review judgements, not opinions") (non-patent cases).

There is no doubt here about what Judge Albright decided. He issued written preliminary constructions adopting MasterObjects' proposals. He then gave Meta an opportunity to contest these preliminary constructions at oral

argument, before adopting the preliminary constructions as final. *See* O.Br. at 10. With six claims briefs limited to three issues (collateral estoppel, "only the changes," and "server initiation"), Judge Alsup was well-equipped to ask whether Judge Albright's rulings were "wrong with the force of a five-week-old, unrefrigerated dead fish." *U.S. Tobacco Cooperative Inc. v. Big South Wholesale of Virginia*, 899 F.3d 236, 258 (4th Cir. 2018).[4] Meta made no such showing, and the District Court made no such finding.

Meta's Brief is silent as to *Christianson*, and instead directs this Court's attention to a pair of cases this Court remanded given decisions that **lacked *any* claim construction**. *See Gechter*, 116 F.3d at 1460 & *CSR, PLC v. Skullcandy, Inc.*, 594 Fed. App'x. 672, 674 (Fed. Cir. 2014). Here, Judge Albright told the parties and future courts exactly what his claim constructions were, after six briefs and oral argument.

---

[4] *Cf. Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1317-18 (Fed. Cir. 2007) (Vacatur for not construing terms was not required where the Court was "able to fully comprehend the specification, prosecution history, and claims and [could] determine that … the district court arrived at the correct conclusion …."); *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1334 n.4 (Fed. Cir. 2000) (Vacatur not required where opinion was "absolutely devoid of any discussion of claim construction" where "the district court cited [*Markman*], for the proposition that claim construction is a matter of law… and … inferentially set forth its view of the scope of the claims"); *Wavetronix LLC v. EIS Electronic Integrated Sys.*, 573 F.3d 1343, 1355 (Fed. Cir. 2009) (construing term for the first time on appeal where the record had been sufficiently developed).

Meta further cites an unpublished opinion where this Court remanded a case for further fact finding on obviousness. *See* R.Br. at 53, citing *Tris Pharma, Inc. v. Actavis Laboratories FL, Inc.*, 755 F. App'x 983, 988 (Fed. Cir. 2019). Without identifying what fact finding went unaddressed at *Markman*, Meta then argues that reconsideration was warranted here, because Judge Albright did not provide fact findings. R.Br. at 53. But Meta says nothing about **which** facts remain unfound, or how factual findings are germane to the constructions here, which present questions of law. There were no "unfound" or secret facts, and Meta cites none. Meta did not dispute that asynchronously has a commonly understood meaning, neither party presented expert claim construction testimony, and the inventor testimony is irrelevant here. *See* O.Br. at 34.

**D. Fairness.**

Finally, there is no unfairness to Meta. Not only did it get its day in court with Judge Albright, but MasterObjects put it on notice that rearguing prior rulings would be subject to reconsideration principles. Appx5366-5367, Appx5381.[5]

[5] Meta suggests that it did not seek leave to move for reconsideration, because Judge Alsup ordered it to wait for summary judgement. *See* R.Br. at 17. First, Judge Alsup did not so order. The Case Management Order simply set forth Judge Alsup's normal procedures—it was silent as to pre-transfer rulings. *See* Appx5396 ("For many years, the Court conducted a claim construction hearing … Instead … claim construction will now be done on summary judgement or at trial …"), *see also* Appx5382 (line 15: "Court's normal practice"). Second, even if true, it would still be Meta that led Judge Alsup astray, as Meta told the District Court in the Case Management Statement that: "MasterObjects takes issue with [Meta] not

Despite this notice, and in contravention of the District Court's local rules, *see* N.D. Cal. Civ. L.R. 7-9 ("motion for leave … must be made … must specifically show reasonable diligence"), Meta sat on its hands, let fact and expert discovery proceed, and waited until the eve of trial to invite error by telling Judge Alsup that he had unlimited discretion to upend long settled matters of law. There is, however, great prejudice to MasterObjects in Judge Alsup revisiting Judge Albright's constructions weeks before trial, constructions the parties relied on through fact and expert discovery alike. In this case, the umpire changed the rules after the teams had left the field and the stadium lights went dark.

## II. <u>NO COLLATERAL ESTOPPEL</u>.

### A. <u>The Full Reach of the Specification Was Not Previously Decided</u>.

Predictably, given Meta's reluctance to discuss the new claim language, Meta argues that the *Google* (Judge Hamilton) Order collaterally estops MasterObjects on the "query message" terms. Meta says that Judge Hamilton's opinion decided the outermost reach as to what MasterObjects can claim on what the client can (indeed, according to Meta, must) send. R.Br. at 4, 21, 27-28. Here, Meta relies near exclusively on MasterObjects' *Google* appeal briefing, as

---

asking Judge Albright to reconsider … but the reality is that no written order has issued …. This Court is free to revisit claim construction at any stage …." Appx5369.

opposed to the claim construction briefing. R.Br. at 4, 16, 27-28, 30. But Meta misapprehends MasterObjects' *Google* appeal briefing entirely.

Meta cites to *Google* appeal briefing where MasterObjects explained that a limitation from the specification was wrongly imported into the claims. *See* Appx979 ("limited by the specification"), Appx997 ("the district court failed to apply this Court's law that limitations … must not be read into the claims from the specification …"). These statements neither admit nor even suggest that the *Google* Order found disclaimer. In fact, MasterObjects' point was precisely the **converse**: the *Google* Court had **not** found a manifest intent to limit the claims to an optional feature of just one embodiment, but, nevertheless, imported a limitation from the specification into the claims. Indeed, MasterObjects' briefing was explicit on how Judge Hamilton used the "just the changes" specification sentence, saying that: "The district court concluded that a single sentence in the **specification *supported* its holding** …" Appx997. This is exactly what Judge Hamilton's Order said and is exactly what MasterObjects says today.

To the extent Meta's point is that *this* Court, the Federal Circuit, given arguments made *only on appeal*, decided the specification disavowed sending anything but "just the changes," R.Br. at 30, the argument fails. Meta cannot carry its burden to show, *see* O.Br. at 49-50, that this Court decided an issue not reached below where this Court summarily affirmed under Rule 36.

In contending that the invention's outer bounds were fully decided in the *Google* district court, Meta ignores most of the record. First, Meta disregards Google's appellate description of what transpired: "[T]his case turns on the **plain and ordinary meaning** of the claims **in view of the specification** and prosecution history, **all of which** compelled the district court's construction." Appx1766. Second, Meta fails to illuminate how an issue never addressed in the claim briefing was litigated. *See* O.Br. at 49. Next, Meta refuses to explain how the *Google* Order's focus on the claim language followed by reference to the specification as "confirms" and "indicates" shows that Judge Hamilton held that sending extant strings was disclaimed. (Instead, Meta pivots to the *Google* Reconsideration Order, R.Br. at 15-16, but that order simply refers back to the prior order: "as noted in the … order." Appx954.)

Finally, Meta disregards the *Google* hearing transcript.[6] *See* Appx901-916. At the hearing, MasterObjects never mentioned disclaimer. For its part, **Google spent seven <u>pages</u> on the claim language, only three <u>lines</u> on the relevant specification statement, and <u>never</u> mentioned disclaimer.** *Compare* Appx907-913 *with* Appx914, *see also* Appx907 ("spend most of my time on the claim

[6] The import of the transcript cannot be lost on Meta, as Google's counsel then, are Meta's counsel now. *Compare* Appx804 *with* R.Br. at Cover.

language"). As for Judge Hamilton, she said that she was "very persuaded" by Google's **claim language** "presentation." *See* Appx925.

The record is clear: the prior issue was not the specification's outer bounds, but rather turned on what the old terms meant based on the then claim language as informed by the specification. To the extent the District Court below found otherwise, it erred.

### B. The Different Claim Language Makes a Difference.

Given that Judge Hamilton determined what specific '529 claim language meant, the correct collateral estoppel inquiry is whether the new and very different claim language matters. *See* O.Br. at 50-51. Here, Meta continues to sidestep the actual claim language, and does not offer any reasoned explanation as to why the different claim language is immaterial to claim construction. Instead, Meta argues that the claim language overlaps and blithely asserts that the language of asserted '866 Claim 1 "says nothing about whether the message includes prior characters or only changed characters." R.Br. at 31-32.

On Meta's first point, MasterObjects does not dispute that there is **some** semantic overlap. But there are also huge differences. And the different claim language matters: the asserted claims are explicit that the client **can** send the full partial string, or for some claims, **must** send the full partial string. *See* O.Br. at

VI.B.i. **The point is that these substantial claim differences make a difference.** *See* O.Br. at VI.D.ii.

On the second point, on what the new claims say, Meta is wrong, as a simple comparison of the *Google* ’529 language against the asserted ’866 claim language makes plain. Judge Hamilton found persuasive Google’s argument that, with respect to ’529 Claim 1, what is sent by the client is different from what is matched by the server, because what is sent are “consecutive queries,” and what is matched is a “lengthening string” that was “**form[ed]**” using the “consecutive queries,” and so the thing sent must be just the change. *See* O.Br. at 47-48, *see also* Appx909-910. In contrast, ’866 Claim 1 says nothing about one thing being used to “form” another; instead, it says that the message sent is used to match: “sending a request message **containing a string** … receiving … the string; **matching… the string** …”. Appx8540, *see also* O.Br. at 53. The new language cannot be squared with Judge Hamilton’s reasoning, which is based on language absent from the new claims.[7] Since the new language makes a difference, it is material, and so estoppel cannot apply. The District Court erred in concluding to the contrary.

[7] Interspersed through Meta’s Brief is one additional estoppel argument. Meta contends that the claim language cannot be meaningfully different because the old and new claims share a specification and both involve a client sending messages. R.Br. at 21, 27, 31. This is nothing more than a veiled “estoppel applies merely because the patents are related argument,” an argument this Court rejects. *See e.Digital Corp. v. Futurewei Technologies, Inc.*, 772 F.3d 723, 727 (Fed. Cir. 2014).

## III. <u>QUERY MESSAGES</u>.

### A. <u>Meta Ignores the Plain Claim Text</u>.

Meta's argument that MasterObjects "misinterprets" the plain claim language turns established construction principles on their head:

As to the terms the "query messages represent the lengthening string" and "query messages corresponding to multiple versions of said input," from the '024 and '628 claims, *see* O.Br. at 18, Meta concedes that this language is *not* in itself limiting as to what is sent. *See* R.Br. at 37 ("[T]he claim language merely requires that the query message includes information about the input string"). Instead, Meta argues that the plain text is unsupportive of MasterObjects, because it is open-ended. *See id.* ("[A]bsent … is any express requirement that the query message … include the full partial string …"). But it is blackletter law that MasterObjects was not required to enumerate what is within the ordinary breadth of its chosen terms. *See Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).

As to the '073 and '866, Meta takes a different tack, arguing that because they use the word "comprising" they cannot exclude sending only the changes. *See* R.Br. at 38. Not so, as a comparison of '024 and '073 claim language readily demonstrates.

’024 Claim 1 permits what is sent to be the extant string or the changes, because it does not require what is sent to be what is matched, *see* Appx8460 (“query messages represent the lengthening string … server … uses the input to query data”), and so does not dictate that what is sent and what is matched are the same thing. In contrast, ’073 Claim 1 mandates sending the extant string, because it mandates that the thing sent is the thing matched. *See* Appx8601 (“sending a string … matching the string”). While the use of “comprising” means that an intermediate step where the string is disassembled at the server and then reassembled pre-matching is not excluded, it cannot save Meta from the plain import of the text that what is matched is the same thing as what is sent, the full partial string. *See* O.Br. at 19.

The plain claim language is fully in MasterObjects’ favor. Given this, Meta resorts to the absurd, arguing that, given the *Google* Order, MasterObjects would have been even more blunt if it intended to cover sending extant strings. *See* R.Br. at 37. What, MasterObjects prosecuted four applications post-*Google* Order over six years with the intent of being estopped? More, not only did MasterObjects change the client query language, it removed the term “session” from the claims, a fact Meta ignores.

The *Google* Order reasoned that “session” referred to a specific preferred embodiment, and so the old claims were directed to that embodiment, one where a

server "recognizes when consecutive requests originate from the same client." *See MasterObjects, Inc. v. Google, Inc.*, No. C 11–1054 PJH, 2013 WL 2319087, at *7 & 10 (N.D. Cal. May 28, 2013). So defined, the concept of a "session"—a server that keeps track of requests from a specific client—is fundamental to Meta's query message (and asynchronously) argument, as a server that does not track cannot glue changes together (or push updates). Accordingly, MasterObjects' elimination of "session" is a "strong indicat[or]" that the new claims do not include a server tracking requirement, and as such, do not require sending only the changes (or server initiation). *Cf. Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 909 (Fed. Cir. 2004).

### B. **Meta Reinvents the Common Specification.**

Meta warps the common specification in four important ways to fit its only the changes narrative:

**First**, Meta persists in arguing that sending only the changes solved a bandwidth problem and that this was core to the invention. *See* R.Br. at 5, 8, 35, 36. But the specification bears none of this out. While Meta provides cites in supposed support, not a single cite describes extant strings as a problem or just the changes as fundamental to the invention.

**Second**, in making its argument that only the changes is "integral" to the overall invention, Meta misconstrues the specification's breadth. Meta's argument

is predicated on the falsehood that the specification never describes query messages in terms broad enough to include sending the extant string. Not true. For example, sending "character-by-character strings" encompasses extant strings. *See* O.Br. at 23. While Meta continues to assert that it does not, R.Br. at 35 & 40, it declines to explain **why** not. Similarly, Meta refuses to explain how "for example" in the statement: "Clients can also use the protocol to send a string of characters. For example, when a user replaces the contents…," is limiting. *See* O.Br. at 24. And, as to Meta's favored statement: "messages that **allow** the **Client Quester** to send just the changes … **instead** of sending the entire input buffer," it describes a potential optimization (just-the-changes) with sending the full partial string being the base case. *See* O.Br. at 25 & 30-31. That is what this text **says**.

More, even if Meta were correct that "just-the-changes" is the only described embodiment, R.Br. at 11 & 35, the law is settled that this is not enough to show a manifest intent to disclaim the claims' clear breadth. *See Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019); *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022).

**Third**, Meta's attempt to deal with the specification's use of the phrase "query message" reimagines the embodiment described. Meta posits that the server-service "query message 'ab'" description is an only the changes description, because it merely shows that more than one character is sent, "ab," and not that any

character is then resent, i.e., "abc" opposed to "c" is sent. *See* R.Br. at 41. But Meta ignores the follow-on description of the next server-service message as "abc," not "c:" "the user types a third character 'c' …. the Server Quester … sends a new query 'abc' to the Service." Appx8454 (19:15-30), *see also* Appx8432. More, while Meta tries to distinguish server-service / client-server messages, the specification explains that this is a meaningless distinction. Appx8450 (11:66-12:1) ("any process … that can send characters and receive string lists can be considered a client"), Appx8450 (11:52-57) ("the invention may be equally used with any implementation that requires communication between a first process … and a second … regardless of whether these processes comprise a typical client-server").

### C. <u>The '073 Specification Supports MasterObjects</u>.

Dissatisfied with the common specification, Meta turns to the '073 specification. There is no solace for Meta there.

While Meta would have this Court believe that the prior art problem was bandwidth constraints caused by sending partial queries ("La" then "Lad") while a user types, that is not what the '073 specification says. It starts with identifying the problem, which is: a lack of immediate feedback, as the user had to input a full query ("Lady Gaga") and then press "Submit." *See* Appx8582 (2:16-32). Both

full partial strings ("Lad") and only the changes ("d") can be used to facilitate immediate feedback. *See* O.Br. at 23-24.

Meta's preferred '073 statement: "each client-side Quester maintains the client-side input … and transmits changes to the QuestObjects server …," *see* R.Br. at 12 & 34, is not limiting for two reasons. First, sending a full partial string "transmits changes"—it tells the server that the input went from "La" to "Lad." Second, it is embodiment specific, as the beginning of the statement (omitted by Meta) makes explicit: "In accordance with an embodiment …." Appx8584 (6:23-24).

Then there are the embodiment descriptions Meta ignores. This specification is replete with references to non-server tracking embodiments that cannot use only the changes messages. For example, it states that:

> In accordance with some embodiments …. The server object **does not remember information** … **and does not combine the input** requests …. Although … there is no such thing as a 'session' being exchanged … these implementations can still recognize a 'user session'… **wherein each request from the client object … represents the full information needed** for the server object to respond.

Appx8597 (31:5-49), *see also* Appx8585 (8:22-27), Appx8587 (11:57-58) ("[I]n simple implementations … no session need be maintained").

As the claims and both the common and '073 specifications make plain, the claims are not limited to sending only the changes.

## IV. <u>ASYNCHRONOUSLY</u>.

### A. <u>The Issue is the Meaning of Asynchronously, Not "Each Side."</u>

Meta's Brief often pretends that the issue is the meaning of "each side." *See, e.g.*, R.Br. at 49. "Each side" is not a claim term. The terms are "asynchronous" and "asynchronously," and the issue is whether these terms require server-initiated communication (server pushing). That was the issue raised by Meta's proposed construction. That was the sole asynchronous *Markman* issue briefed long-ago. *See* § II.B above. And this is the limitation Judge Alsup read into the claims: "Meta … *contends that asynchronous means that the server must be able to initiate communications*. This order agrees." Appx11.

Meta would also have this Court believe that MasterObjects changed its position on the meaning of asynchronously and its asynchronously construction. *See* R.Br. at 5 & 47. But, as explained above, not only was MasterObjects' claim briefing explicit that asynchronously does not include a server-initiation required, Meta said that MasterObjects' construction did not include server-initiation. *See* § II.B. Indeed, when it came time to proffer a non-infringing alternative under MasterObjects' construction, Meta proposed a blocking system where the client must wait for a server response, before continuing to speak, not a system where one side was required to initiate. Appx8933-8934, Appx8936-8937. Meta *then* understood "each side of the communication is free to communicate without

waiting for the other side" to mean non-blocking—that "each side" is free to communicate without waiting for the other side to finish speaking opposed to taking turns.[8] Put differently, Meta did not *then* regard MasterObjects' construction as a rephrasing of its "both the client and the server can initiate communications at any moment in time" construction. Asynchronously, and MasterObjects' construction, do not speak to who can speak first.

### B. Meta Renders Claim Language Superfluous and Reads in a Dependent Claim Requirement.

Meta posits that MasterObjects' reading of asynchronously and its construction renders both meaningless. In so doing, Meta concedes that claim text other than "asynchronously" requires that the client be able to initiate: "MasterObjects' proposal would render the term 'asynchronous' superfluous **in claims that require the client to communicate first. The client-initiated communication** must still be performed asynchronously, which requires that *each side* is *free* to communicate.…" R.Br. at 49 (bold added). But Meta forgets an important detail, it does not argue that asynchronously and MasterObjects' construction require just server-initiation, it argues that "both the client and the server can initiate." Accordingly, it is Meta's reading of the terms that renders

[8] Just as MasterObjects explained in its claim briefing. *See, e.g.,* Appx1136.

language superfluous, as it renders the other language that describes client initiation redundant. *See* O.Br. at 36-37.

Meta also argues that claim differentiation favors it, because the ’024 independent-dependent claim relationship “is more akin to a car with a radio (claim 1) and adding that the radio be tuned to a specific station (claim 30).” R.Br. at 50. But that is not an apt analogy for Meta’s view. Under Meta’s view, if claim 1 is to a car with FM radio (a server that responds to queries), and a dependent claim adds satellite radio (a server that pushes updates), the dependent claim “presumes” a satellite receiver (a server that can initiate). But the fact that Claim 30’s radio is both FM and satellite does not dictate that Claim 1 had a satellite receiver; all it means is that the satellite receiver was part of the added functionality.

### C. Asynchronously Has Its Ordinary Meaning—There is No Lexicography Here.

Meta argues that “[t]hroughout the asserted patents” asynchronously is used to mean that both the client and the server can initiate. *See* R.Br. at 13. In support of this blunt statement Meta cites two things: First, it cites a single phrase it argues is definitional. This phrase appears in a single sentence in the common specification and in the ’529 prosecution history. *See* O.Br. at 44-45. The arguments made below as to why Meta’s one specification sentence is non-

definitional apply with equal force to the unasserted patent's prosecution history. Second, Meta cites sever "push" embodiments.

On the push embodiments, Meta admits that these are just embodiments. *See* R.Br. at 12 ("describes a 'push' embodiment …."). Embodiments do not limit what can be claimed, and, as MasterObjects explained, the asserted claims are directed to a different embodiment, an embodiment where the server provides immediate feedback as a user types. *See* O.Br. at 40-41.

As to Meta's lexicography argument, there is no "clearly express[ed]" intent to redefine here:

**First**, Meta's one sentence does not use language this Court views as clearly definitional. It does not say asynchronously "means" nor use "that is."

**Second**, this sentence is not just located in the QuestObjects embodiment weeds; rather, it also uses capitalized terms. **It is specific to an embodiment.** *See* O.Br. at 41-42. It fails not only to suggest that it is definitional, but to suggest it speaks to the whole invention. *See Ancora Tech., Inc. v. Apple, Inc.*, 744 F.3d 732 (Fed. Cir. 2014) (preferred embodiments and non-limiting examples "not sufficient to redefine …."); *Akamai Tech., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1375 (Fed. Cir. 2015) ("The patent's reference to preferred embodiments … does not provide the clarity necessary to find that the patentees intended to limit the

term ….”); *Pelican Int'l Inc. v. Hobie Cat Co.*, No. 20-cv-2390-BAS-MSB, 2022 WL 298959, at *15 (S.D. Cal. Feb. 1, 2022) (“i.e.” not limiting in context).

**Third**, Meta's redefining of asynchronously with this sentence is inconsistent with the specifications' descriptions of asynchronously as having its ordinary meaning.[9] Not only has Meta never contested that asynchronously has an established meaning, it has never argued that this meaning is about client-server initiation. It is this uncontested ordinary meaning that is the starting point for claim construction: “The inquiry into how [an artisan] understands a claim term provides an objective baseline from which to begin claim interpretation.” *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Here, the specifications' references to existing asynchronous technologies make plain that MasterObjects adhered to the baseline. *See* O.Br. at 39, Appx8459 ('024, 30:58-61) (“The present invention can be implemented … using any … languages that support asynchronous ….”), Appx8598 ('073, 34:19-21) (“[D]evices that do not allow

[9] While in a different context, the '073 specification's ordinary use of “synchronously” wars with Meta's attempt to redefine asynchronously: “the QuestObjects server can perform all matching queries simultaneously (i.e., the various content queries are performed at the same time …). In accordance with other embodiments, content queries can be performed synchronously (i.e., subsequent content queries will only be performed after the prior content queries have finished).” Appx8589 ('073, 15:4-11). In short, the opposite of asynchronously is “blocking” not “only one side can initiate.”

asynchronous communication (i.e. browsers or devices that do not support Flash, AJAX, or similar technologies …”). (Meta did not retort this point.)

**Fourth**, Meta’s redefining of asynchronously is inconsistent with the specifications’ uses of asynchronously: (1) to describe a back-and-forth not initiation; and (2) in conjunction with separate language that describes who goes first. *See, e.g.,* Appx8585 (’073, 7:66-8:2) (“the asynchronous nature of the consecutive **messages** (requests and responses) that are **exchanged** between the client and the server”), Appx8585 (’073, 8:24-25) (“**communicating messages** asynchronously …”), Appx8425 (’024, Abstract), Appx8450 (’024, 11:48-50), Appx8543 (’073, Abstract) (“The **server part receives** … from … the client part, and asynchronously returns matching information …”).

**Fifth**, Meta’s redefining of asynchronously is irreconcilable with the common specification’s explanation of why a client-side usability test is “important.” A test is important because asynchrony can cause the client to receive results out of order, such that the received result may not match the current user input. As MasterObjects explained, this is not a result of the client and server both being able to initiate, but instead a result of the client and server being free to talk over one another. *See* O.Br. at 39-40, *see also* Appx8601 (’073 Claim 3). (Here too, Meta provided no retort.)

Meta's redefinition is inconsistent with the claims and the specifications. There is no lexicography here. *See N. Telecom Ltd. v. Samsung Elec. Co., Ltd*., 215 F.3d 1281, 1291 (Fed. Cir. 2000) ("['[V]]aried use of a disputed term in the written description demonstrates the breadth of the term rather than providing a limited definition'"); *Barkan Wireless Access Tech., L.P. v. Cellco Partnership*, 748 Fed. App'x 987, 990 (Fed. Cir. 2018) (Explaining that this Court's cases "set a high standard for lexicography" and holding that "Access Points" was not clearly defined by: "WiFi public hotspots (or Access Points—'AP')," "given other statements in the specification") (nonprecedential); *Surgalign Spine Technologies, Inc. v. LifeNet Health*, -- Fed. App'x --, 2022 WL 1073606, at *9 (Fed. Cir. Apr. 11, 2022) (nonprecedential).

## V. **CONCLUSION.**

For the reasons stated herein and in MasterObjects' Opening Brief, MasterObjects respectfully requests that this Court reverse the District Court's erroneous rulings, vacate the Order and final judgment, and remand for further proceedings.

Dated: March 22, 2023

Respectfully submitted,

**HOSIE RICE LLP**

By: */s/ Spencer Hosie*
Spencer Hosie
Diane S. Rice

Darrell R. Atkinson
HOSIE RICE LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111
(415) 247-6000
shosie@hosielaw.com
drice@hosielaw.com
datkinson@hosielaw.com

*Counsel for Appellant MasterObjects, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), Fed. R. App. P. 32(g)(1), Fed. Cir. Rule 32(b)(1), and Fed. Cir. Rule 32(b)(3), because it contains 6,372 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. Rule 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated: March 22, 2023

Respectfully submitted,

**HOSIE RICE LLP**

By: */s/ Spencer Hosie*
Spencer Hosie
Diane S. Rice
Darrell R. Atkinson
HOSIE RICE LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111
(415) 247-6000
shosie@hosielaw.com
drice@hosielaw.com
datkinson@hosielaw.com

*Counsel for Appellant MasterObjects, Inc.*