NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

______________________

**MASTEROBJECTS, INC.,**
*Plaintiff-Appellant*

**v.**

**META PLATFORMS, INC.,**
*Defendant-Appellee*

______________________

2023-1097

______________________

Appeal from the United States District Court for the Northern District of California in No. 3:21-cv-05428-WHA, Judge William H. Alsup.

______________________

Decided: February 15, 2024

______________________

DARRELL RAE ATKINSON, Hosie Rice LLP, San Francisco, CA, argued for plaintiff-appellant. Also represented by SPENCER HOSIE, DIANE SUE RICE.

JEFFREY G. HOMRIG, Latham & Watkins LLP, Austin, TX, argued for defendant-appellee. Also represented by GABRIEL K. BELL, RACHEL WEINER COHEN, Washington, DC; JOSEPH HYUK LEE, Costa Mesa, CA; DOUGLAS ETHAN LUMISH, Menlo Park, CA.

______________________

Before LOURIE, REYNA, and CUNNINGHAM, *Circuit Judges*.

LOURIE, *Circuit Judge*.

MasterObjects, Inc. ("MasterObjects") appeals from a decision of the United States District Court for the Northern District of California granting summary judgment that Meta Platforms, Inc. ("Meta") did not infringe U.S. Patents 8,539,024 (the "'024 patent"); 9,760,628 (the "'628 patent"); 10,311,073 (the "'073 patent"); and 10,394,866 (the "'866 patent") (collectively, the "asserted patents"). *MasterObjects, Inc. v. Meta Platforms, Inc.*, No. C 21-05428, 2022 WL 12039301 (N.D. Cal. Oct. 20, 2022) ("*Decision*"). For the following reasons, we *reverse and remand*.

BACKGROUND

The asserted patents all descend from a common application filed in 2001 that resulted in U.S. Patent 8,112,529 (the "'529 patent"). The '024, '628, and '866 patents are continuations of the '529 patent and share its specification, and the '073 patent is a continuation-in-part. The patents are directed to systems for querying that provide a user with results as the user types, rather than waiting for the user to submit the full search term. The specifications describe several embodiments, including the exemplary "QuestObjects" system. For example, claim 1 of the '024 patent is presented below:

> 1. A system comprising:
>
> a server system, including one or more computers, which is configured to receive query messages from a client object, *the server system asynchronously receiving and responding to the query messages from the client object over a network*;
>
> the client object that, while a user is providing input comprising a lengthening string of characters, sends query messages to the server system;

> *whereby the query messages represent the lengthening string as additional characters are being input* by the user; and
>
> wherein the server system, while receiving said query messages, uses the input to query data available to the server system and send return messages to the client object containing results in response to the input; and
>
> wherein, upon receiving a return message of the return messages from the server system, the client object tests the usability of the results in the return message by checking that the return message corresponds to the latest query, and if usability is established, the client object displays or returns at least some result data to the user.

’024 patent col. 31 l. 52–col. 32 l. 7 (emphases added).

MasterObjects sued Meta for infringement of the asserted patents in the United States District Court for the Western District of Texas, where the case was assigned to Judge Albright. Meta moved to transfer the case to the Northern District of California. Pursuant to Judge Albright’s Standing Order at the time, the parties proceeded with claim construction before any ruling on the Motion to Transfer. Appellant’s Br. at 7. Three claim construction disputes arose between the parties: (1) the construction of “query message,” (2) the construction of “asynchronously,” and (3) the collateral estoppel effect, if any, of a claim construction order in a prior district court case involving the ’529 patent, *MasterObjects, Inc. v. Google, Inc.*, No. C 11-1054, 2013 WL 2319087 (N.D. Cal. May 28, 2013) (“*Google* Order”), which we summarily affirmed in *MasterObjects, Inc. v. Google, Inc.*, 582 F. App’x 893 (Fed. Cir. 2014). These issues are common to all of the asserted patents.

Meta argued that the specifications of the asserted patents limit the claims to systems that send only the

changes to a user input string since the last query was sent to the server, rather than permitting characters to be re-sent in consecutive queries. *See* J.A. 344. Meta argued that each "query message" thus consists of "just the changes" to the user input string, rather than the full partial string including portions already sent to the server. *See* J.A. 357–59, 5388. For example, under Meta's construction, if a user typed "cat," the client could send "c," then "a," then "t" to the server, with each character sent as a separate message, or the client could send "c" then "at" as two separate messages; the server then fuses the portions of the input string together to form the word "cat." J.A. 341. Under Meta's construction the client never resends characters, such as by sending "c" then "ca" then "cat." *See Id.* MasterObjects argued that the claims were not so limited, and that Meta was reading a specific embodiment into the claims. J.A. 1118–19. Meta also argued that the *Google* Order collaterally estopped MasterObjects from disputing Meta's construction. J.A. 356. MasterObjects opposed applying estoppel, arguing that the *Google* order involved a different patent with different claims and terms. J.A. 2118.

For the other disputed term, Meta argued that, based on the patentee's lexicography, "asynchronously" must be construed to require the server be able to initiate communication with the client. J.A. 349. MasterObjects disagreed, arguing that "asynchronously" describes the timing of communications between the server and client *after* initiation (*i.e.*, by permitting them to speak over one another), not the initiation itself, and that Meta was pointing to a non-limiting embodiment as supposed evidence of lexicography. J.A. 1136. Specifically, MasterObjects argued that "asynchronously" should be construed as either (1) plain and ordinary meaning, (2) "[e]ach side of the communication is free to communicate without waiting for the other side," or (3) "each side of the communication is free to communicate with the other side in a non-blocking matter,"

while Meta argued it should be construed as "[b]oth the client and the server can initiate communications at any moment in time." *See* J.A. 5388.

On November 29, 2020, the Texas court provided the parties with its preliminary constructions tentatively adopting MasterObjects' proposed constructions. That is, "query message" was given its plain and ordinary meaning and "not limited to a message/string comprising only the changes to an input string and may include the entire input string," and "asynchronously" was construed as "[e]ach side of the communication is free to communicate without waiting for the other side." *Id.* Following oral argument on claim construction, the Texas court, in a minute order without written opinion, adopted its preliminary constructions as final. *See* J.A. 2495. Meta did not file a motion for reconsideration in the Texas court, and those constructions were applied throughout fact and expert discovery.

On July 13, 2021, the Texas court granted Meta's motion to transfer the case to the Northern District of California, where it was assigned to Judge Alsup. *See* J.A. 5357, 5363. Meta did not move for reconsideration of the Texas court's claim construction by the California court. However, upon the close of discovery, Meta moved for summary judgment of noninfringement, reasserting its original claim construction positions that had been rejected by the Texas court. J.A. 6954. MasterObjects opposed the motion, arguing that (1) the constructions previously decided by the Texas court were correct, and (2) because Meta had not moved for reconsideration of those constructions, the California court was precluded from adopting different constructions. J.A. 8771.

Approximately three weeks before the scheduled trial date, the California court granted Meta's motion for summary judgment of noninfringement and entered judgment in favor of Meta. The court first found that Meta did not need to file a motion for reconsideration, or even satisfy a

motion-for-reconsideration standard, and that the court was not precluded from "determining a different construction." *Decision* at *3. The court pointed out that the original constructions by the Texas court were finalized in a minute order, providing "nothing on which to base [a motion for reconsideration] evaluation." *Id.*

The California court also found that, in view of the *Google* Order, collateral estoppel precluded MasterObject's construction of "query message." Although the *Google* Order construed a different term in the '529 patent and related U.S. Patent 8,060,639 (the "'639 patent"), the court noted that the asserted patents were in the same family and that "they all share a common specification." *Id.* at *4. It found that the *Google* Order:

> was based on the following passage from that common specification (emphasis added):
>
> > If the results are not found in the cache, the Client Quester uses the Client Controller to send the new input buffer to the Server Quester, so that a new query can be executed (step **611**). To support this, *the protocol of the present invention provides a number of messages that allow the Client Quester to send just the changes to the input buffer, instead of sending the entire input buffer*[.]
>
> ('024 patent 20:11–17).

*Id.* The court emphasized that the *Google* Order found "that the use of 'the current invention' here indicates that the description is intended to apply to the invention as a whole, and not just a single embodiment." *Id.* (quoting *Google* Order at *12). The court therefore found that the claim construction issue in this case was "identical" to the one addressed in the *Google* Order: "whether the specification limits the claimed invention such that the client sends

'just the changes' to the server." *Id.* It further found that the asserted claims did "not differ substantively from the claims considered in *Google* such that collateral estoppel would not apply." *Id.* The court therefore adopted Meta's proposed "just the changes" construction of "query message." *Id.* at *4–6.

For "asynchronously," the California court first acknowledged that "[a]synchronous in the general, computer programming sense broadly refers to 'something that is not depending on timing.'" *Id.* at *6 (citation omitted). It then found that, although it was "not bound to the construction adopted in Texas," it "need not adjust the prior construction because it adequately captures the nature of the term." *Id.* at *6. However, the court ultimately added to the Texas court's construction Meta's previously rejected proposed requirement that "[b]oth the client and the server can initiate communications at any time." *Id.* It relied primarily on language in the specification that "[t]he system is bi-directional and asynchronous, *in that* both the Client and the Server can *initiate communications at any moment in time*." *Id.* (quoting '024 patent, col. 12 ll. 24–26) (emphasis added by the California court). MasterObjects argued that that language described a non-limiting embodiment called "QuestObjects." The court acknowledged that QuestObjects was "a preferred embodiment," but found that the relevant passage of the specification was not embodiment-specific. *Id.* at *6. Based on that understanding, the court adopted a server initiation requirement for "asynchronously." *Id.* at *6–9.

In light of its new constructions, the California court granted summary judgment of noninfringement and entered judgment in favor of Meta accordingly. *See id.* at *9; J.A. 17. MasterObjects timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## Discussion

We review a district court's grant of summary judgment under the law of the regional circuit, in this case the Ninth Circuit. *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 974 (Fed. Cir. 2022). The Ninth Circuit reviews a district court's grant of summary judgment *de novo*. *Id.*

### I

We first address whether or not MasterObjects is collaterally estopped from asserting that "query message" is not limited to "just the changes." We review a district court's application of collateral estoppel *de novo*. *e.Digital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723, 726 (Fed. Cir. 2014). That review is guided by regional precedent, but we apply this Court's precedent to any aspects that involve "substantive issues of patent law." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (citing *Aspex Eyewear, Inc. v. Zenni Optical, Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013)). The Ninth Circuit also reviews a district court's application of collateral estoppel *de novo*. *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010).

Collateral estoppel only applies if: "(1) the issue necessarily decided in the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against which collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *e.Digital*, 772 F.3d at 726 (citing *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000)).

As explained above, the *Google* Order involved the '529 patent, from which the asserted patents claim priority, and the related '639 patent. The court in the *Google* Order considered the common construction of four phrases each using the term "additional characters." *Google* Order at *11. The *Google* court adopting Google's proposed construction that the "additional characters" phrases meant "only the

changes to the input string that were not sent in any previous consecutive query." *Id.* at *12. In reaching that determination, the court focused on "the claim language itself," finding that that the language "suggests that the 'lengthening string' is formed by piecing together multiple smaller queries, rather than by receiving iteratively longer versions of the string." *Id.* (quoting the '529 patent claims). It went on to note that:

> Claim 1 of the '529 patent describes how "consecutive additional characters" are input at the client and sent as "consecutive queries" to the server, "wherein each of the corresponding consecutive queries lengthens the string by the additional characters, to form a lengthening string." The server then "receiv[es] each of the corresponding consecutive queries that modify the lengthening string." The words "lengthens" and "modify" suggest that the server is not wiping its slate clean with each new submitted query, but is instead combining the queries to form the "lengthening string."

*Id.* (quoting '529 patent, claim 1). Only after considering the claim language did the court find that "[t]he specification *confirms* this understanding." *Id.* (emphasis added).

It is not clear that the *Google* Order's interpretation of the specification was essential to its construction. Although the *Google* Order suggests that portions of the common specification may limit the overall invention, it did not clearly find lexicography or disavowal. *See Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992) ("The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment."). There is no mention of lexicography or disavowal in the *Google* Order, or even in the parties' briefs to that court. *See* Appellant's Reply Br. at 12–13. And the *Google* Order only relies on the specification to "confirm" its understanding of the disputed terms based on the

surrounding claim language. *Google* Order at *12. We summarily affirmed the *Google* Order without opinion, and thus without explaining whether the language in the specification was necessary for the affirmed construction. *MasterObjects*, 582 F. App'x 893; Fed. Cir. R. 36. Because the claim language may provide an independent basis for the construction, there is doubt that the *Google* Order's interpretation of the specification was necessary to the judgment, as is required for collateral estoppel to apply. *e.Digital*, 772 F.3d at 726.

Moreover, the *Google* Order's focus on the specific claim language at issue is significant. The '024, '628, and '866 patents are continuations of the '529 patent and share its specification, while the '073 patent is a continuation-in-part. However, "a court cannot impose collateral estoppel to bar a claim construction dispute solely because the patents are related." *e.Digital*, 772 F.3d at 727. Rather, we must consider whether or not the intrinsic record for each patent, including the claims, differs in a material way. The "additional character" phrases at issue in the *Google* Order do not appear in the claims of asserted patents here. And neither does any of the surrounding claim language considered in the *Google* Order, such as "lengthens" or "modify." *See eBay Inc. v. MasterObjects, Inc.*, No. IPR2017-00740, 2017 WL 3209158, at *4 (P.T.A.B. July 27, 2017) (finding in an Institution Decision that estoppel did not apply to the construction of "query message" in the '024 patent claims, in part because the *Google* Order "construed the term 'additional characters' in view of additional claim language, 'lengthens' and 'modify,'" which did not appear in the '024 patent claims). Rather, the claims at issue here include a different term, "query message," with different surrounding language, such as "corresponds" and "represents." *See, e.g.*, '024 patent, claim 1. Meta asks us to apply an estoppel effect to a prior court's construction of a different term in a different patent with different surrounding claim language. We decline to do so, as we do not find the issues to

be identical. *See, e.g.*, *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1319–20 (Fed. Cir. 2013) (finding that a prior decision that opined on the patent's specification "merely determined the best construction for a single disputed claim term, a term that is absent from the claims . . . now before us").

Further, the '073 patent is a continuation-in-part that includes substantial new material in its specification while incorporating the '529 specification by reference. Although we do not find applying estoppel appropriate for any of the asserted patents, it would be particularly inappropriate to apply estoppel effect to the '073 patent, as the '073 specification differs in material ways from those at issue in the *Google* Order. *See e.Digital*, 772 F.3d at 727 ("A continuation-in-part, for instance, may disclose new matter that could materially impact the interpretation of a claim, and therefore require a new claim construction inquiry."). For example, it includes additional language, such as that, in some embodiments, the server "does not remember information . . . and does not combine the input requests" and that "each request from the client . . . represents the full information needed." '073 patent, col. 31 ll. 23–28, 46–49. When considering a specification for purposes of claim construction, it is important to consider it as a whole, which the *Google* Order simply could not have done for the '073 patent. *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("The court must always read the claims in view of the full specification."); *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1379–80 (Fed. Cir. 2001) ("In construing terms used in patent claims, it is necessary to consider the specification as a whole . . . ."). The California court thus erred in not considering any potentially material differences in the disclosures between the previously litigated patents and the '073 patent.

We therefore reverse the decision of the California court and hold that collateral estoppel does not apply to the

construction of the term "query message" based on the *Google* Order.

## II

We next turn to the construction of the disputed terms "query message" and "asynchronous." We review "a district court's claim construction and its interpretations of intrinsic evidence de novo" and "any subsidiary fact findings based on extrinsic evidence for clear error." *Apple*, 25 F.4th at 967. "Absent lexicography or disavowal, we do not depart from the plain meaning of the claims." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016). In order for a patentee to act as its own lexicographer, it must "clearly set forth a definition of the disputed claim term" and "clearly express an intent to redefine the term." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (internal quotation marks and citation omitted). Likewise, disavowal occurs only when there is a clear and unmistakable intent to exclude a particular feature from the claimed invention. *Luminara*, 814 F.3d at 1353.

### A. "Query Message" Construction

MasterObjects argues that, as the Texas court found, "query message" should be given its plain and ordinary meaning such that it is "not limited to a message/string comprising only the changes to an input string, and may include the entire input string." Appellant's Br. at 17. Meta argues that, as the California court found, "[e]ach query consists of only the changes to the input string that were not sent in any previous consecutive query." Appellee's Br. at 34–35. Meta does not argue that any claim language limits "query message" in such a manner, but rather points to a passage of the specification, which provides: "[T]he protocol of the present invention provides a number of messages that allow the Client Quester to send just the changes to the input buffer, instead of sending the entire input buffer." *Id.* (quoting '024 patent, col. 20 ll. 14–17).

Meta argues that, by using the language "the present invention," that text applies to and limits the invention as a whole. *Id.* MasterObjects responds that that statement is limited to a specific embodiment, as evident from the permissive language, "allow," and placement within the specification. Appellant's Br. at 30–31.

We agree with MasterObjects that "query message" is not limited as Meta suggests. Claim construction "begins and ends . . . with the actual words of the claim." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998); *see also Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116–17 (Fed. Cir. 2004). Nothing in the claim language limits "query message" to "just the changes." And even when a patent only describes a single embodiment, the claims are not necessarily construed as being limited to that embodiment. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc). We must avoid importing limitations from the specification into the claims. *Id.* Although Meta correctly observes that we have previously found statements including "the present invention" to indicate clear and unmistakable disavowal, *see, e.g.*, *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006), we have also found that the phrase "is not always so limiting," *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1136 (Fed. Cir. 2011). In this case, the specification language Meta points to merely describes what is "allow[able]." '024 patent, col. 20 ll. 14–17; *see also id.* col. 11, ll. 57–61 (describing "sending single characters" as an "optimiz[ation]"). None of the passages Meta cites unambiguously makes clear that sending "just the changes" is *required*, to the exclusion of re-sending characters previously sent, and do not amount to clear and unmistakable disavowal of sending more than just the changes. *See*

*Absolute Software*, 659 F.3d at 1137 (relying on terms like "can" as indicating that a feature was "optional" when concluding that there was no disavowal); *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 797–98 (Fed. Cir. 2019) (similar).

Moreover, the *only* time the term "query message" is used in the specification, albeit in another context, it refers to sending a multiple-character string "ab", after separately receiving, at the server, the letter "a" then the letter "b." *See id.* col. 18 l. 45–col. 19 l. 2 ("send the appropriate query message 'ab'"). This passage is not conclusive on its own but provides further support for our conclusion that there was no clear and unmistakable disavowal.

Because we do not find clear and unmistakable disavowal, we do not depart from the plain and ordinary meaning of the term. We therefore find that "query message" should be construed as not limited to a message/string comprising only the changes to an input string and may include the entire input string.

B. "Asynchronous" Construction

MasterObjects argues that the "asynchronous" terms should not require that the server be able to initiate communications, whereas Meta argues that both server and the client must be able to initiate communications. Meta argues that the patentee acted as its own lexicographer and that the specification defines the claimed system as "bi-directional and asynchronous, in that both the Client and the Server can initiate communications at any moment in time." *Id.* col. 12 ll. 24–26. It argues that the use of "in that" signifies what "asynchronous" means without limitation to a particular embodiment. Appellee's Br. at 45. MasterObjects contends that that language was concerning a specific embodiment, QuestObjects, and is therefore non-limiting. Appellant's Br. at 41.

We agree with MasterObjects that the patentee did not act as its own lexicographer. In order for a patentee to have

acted as its own lexicographer, it "must 'clearly express an intent' to redefine the term." *Thorner*, 669 F.3d at 1365 (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008)). "It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments . . . ." *Id.* We see no clear intent to define "asynchronous" as requiring the server to be capable of initiating communication. Although lexicography requires no formal phrases or magic words, *Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004), Meta does not point us to any prior decision that has held that "in that" signifies a clear intent to define a term, and we decline to do so here. Further, the statement at issue is not simply referring to "asynchronous" alone, but "bi-directional and asynchronous," making the patentee's intent even less clear. '024 patent, col. 12 ll. 24–26.

Moreover, the use of "Client" and "Server" with capital letters supports our conclusion that the statement in question is limited to the QuestObjects embodiment and does not speak to the broader invention *as a whole.* Indeed, Meta acknowledged during claim construction in the Texas court that "[t]he common specification . . . proceeds to capitalize 'Client' and 'Server' when it speaks of a specific embodiment." *See* Meta's Resp. Claim Constr. Br. at 13, J.A. 2126 (citing '024 patent, col. 11 ll. 50–65). *See also MasterObjects, Inc. v. eBay, Inc.*, No. 3:12-cv-680, 2013 WL 1287428, at *4 (N.D. Cal. Mar. 28, 2013), *and MasterObjects, Inc. v. Yahoo!, Inc.*, No. C 11-02539, 2013 WL 6185475, at *4 (N.D. Cal. Nov. 26, 2013) (considering the same portion of the specification and finding that it described a specific embodiment, QuestObjects). As the California court recognized, QuestObjects is merely exemplary, the "preferred embodiment." *Decision* at *6. The discussion of "asynchronous" in relation to that embodiment does not amount to a clear and unmistakable

disavowal. We therefore must apply the plain and ordinary meaning of "asynchronous." *Luminara*, 814 F.3d at 1353.

We agree with the California court that "[t]he language of the claims does not indicate that only the client initiates communications while the server lacks such functionality," *Decision* at *7, but it does not follow that the claims *require* the server also be able to initiate communications. We therefore construe "asynchronously" to mean that, after initiation of communication, each side of the communication (*i.e.*, the client or server) is free to communicate without waiting for the other side. The server need not be, but may be, capable of initiating communication. That construction is consistent with the specification and the California court's finding that "asynchronous" "in the general computer programming sense broadly refers to 'something that is not depending on timing,'" with which we see no clear error. *Decision* at *6.

## III

MasterObjects argues that the California court should not have revisited the issue of claim construction, particularly without a motion for reconsideration and after the close of discovery. Meta argues that a district court is free to reassess constructions as a case proceeds, especially when, like here, there was no written opinion explaining the constructions. Because we reverse the California court's constructions on the merits (*i.e.*, the constructions and application of collateral estoppel), we need not reach this issue.

## CONCLUSION

Because the California court's decision to grant summary judgment of noninfringement was based on its erroneous application of collateral estoppel and constructions of "query message" and "asynchronous," with which we disagree, the summary judgment decision is *reversed*, and this case is *remanded* for further proceedings.

**REVERSED AND REMANDED**

COSTS

Costs to appellant.